# EXHIBIT A

1    DOWNEY BRAND LLP
     ANTHONY L. VIGNOLO (Bar No. 203933)
2    avignolo@downeybrand.com
     3425 Brookside Road, Suite A
3    Stockton, California 95219
     Telephone:    209.473.6450
4    Facsimile:    209.473.6455

Electronically Filed
10/10/2024 3:02 PM
Superior Court of California
County of Stanislaus
Clerk of the Court
By: Hannah Guisadio, Deputy

5    Attorneys for Plaintiff
     GROWER DIRECT NUT COMPANY, INC.

$435 PAID

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF STANISLAUS

10

11   GROWER DIRECT NUT COMPANY, INC.,          Case No. CV-24-008132
     a California corporation;
12                                             **COMPLAINT FOR:**
             Plaintiffs,
13                                             **1.    Breach of Contract;**
          v.                                   **2.    Breach of Covenant of Good**
14                                             **       Faith and Fair Dealing; and**
     INDEMNITY INSURANCE COMPANY OF            **3.    Declaratory Relief**
15   NORTH AMERICA, a Pennsylvania
     corporation; and DOES 1 through 25,       Action Filed:
16   inclusive,                                Trial Date:

17           Defendants.

18

19          COMES NOW Plaintiff GROWER DIRECT NUT COMPANY, INC., a California

20   corporation ("GDNC" or "Plaintiff"), bringing causes of action against Defendant INDEMNITY

21   INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation ("CHUBB"),

22   and DOES 1 through 25, inclusive (collectively referred to herein as "Defendants"), and alleges:

23                                **THE PARTIES**

24          1.     At all times mentioned herein, GDNC was, and is, a corporation organized and

25   existing under the laws of the State of California with its principal place of business in the County

26   of Stanislaus, California.

27          2.     At all times mentioned herein, CHUBB was, and is, a Pennsylvania corporation

28   that is authorized to issue and delivery policies of insurance in the State of California.

DOWNEY BRAND LLP

4152065.1

1

COMPLAINT

This case has been assigned to Judge Speiller, Stacy
Dept. 22
Department _____ for all purposes including Trial.

DOWNEY BRAND LLP

3.     The true names and capacities, whether individual, corporate, associate or otherwise, herein named as Does 1 through 25 are unknown to Plaintiff at this time.  Plaintiff is informed and believes, and on that basis alleges, that each of the Doe defendants is responsible in some manner for the occurrences herein referred to, and that the injuries and damages as herein alleged were proximately caused by those defendants.  Plaintiff sues said defendants by such fictitious names on the grounds that the true names and capacities of said defendants are unknown to Plaintiff at this time, and will amend this Complaint as and when the true names and capacities of the Doe defendants are ascertained.  Each reference in this Complaint to "Defendants" also refers to defendants sued under fictitious names.

4.     Each defendant is, and at all times mentioned herein was, the agent, employee, or representative of the other, and each defendant in doing the acts or in omitting to act as alleged in this Complaint, unless otherwise specified herein, was acting within the course and scope of his or her actual or apparent authority pursuant to such agency, or the alleged acts or omissions of each defendant as agent were subsequently ratified and adopted by each defendant as principal.

### GENERAL ALLEGATIONS

5.     GDNA was formed as a California corporation on June 7, 2004, and since such date has been a processor of in-shell, shelled, and diced conventional and organic walnuts which supply industrial food processors, retailers, and produce markets worldwide.

**The Policy**

6.     CHUBB issued a Marine Open Cargo insurance policy (Policy No. 7910061) to GDNC for the term of July 29, 2021, through July 29, 2022, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit A** (the "Policy").  The Policy provides coverage through three separate sections, including Section I ("Ocean Cargo & War Policy"), Section II ("Inland Transportation"), and Section III ("Warehouse and Processing").  The dispute at issue involves only coverage under Section II, for which GDNC paid a premium of $8,621.00, and Section III, for which GDNC paid a premium of $119,894.

7.     Paragraph 7 (entitled "**DURATION OF INSURANCE**") of Section II states in relevant part:

1                    If by the terms of sale or terms of purchase, the
2                    **Assured** is responsible for loss or damage to the

If by the terms of sale or terms of purchase, the **Assured** is responsible for loss or damage to the goods or merchandise at the point of origin prior to the time this insurance would otherwise begin to apply, then this insurance will apply beginning at the time the risk of loss or damage passes to the **Assured**, but in no event will this insurance apply for more than seventy-two (72) hours prior to the time loading of the goods and merchandise was scheduled to begin pursuant to the terms of sale or terms of purchase or the written instructions.

8.      Paragraph 1 (entitled "**WAREHOUSE AND PROCESSING COVERAGE**") of Section III identifies the scope of coverage afforded thereunder, stating in relevant part:

[T]o cover direct physical loss or damage caused by an **Occurrence** to the goods and merchandise of the **Assured** … while said goods or merchandise are being processed, manufactured, assembled, modified, tested or otherwise worked upon at Covered Locations set forth on the Declarations attached to this **Policy**.

…

This Section III Warehouse and Processing Coverage applies to loss or damage to goods and merchandise insured while such goods and merchandise are being processed, manufactured, assembled, modified, tested or otherwise worked upon, but only if such loss or damage is directly caused by the follow perils: fire, explosion, lightning … .

9.      Paragraph 4 (entitled "**GOODS AND MERCHANDISE INSURED**") of Section III identifies the scope of coverage afforded thereunder, stating in relevant part:

Coverage under this Section III Warehouse and Processing Coverage of the **Policy** applies to goods and merchandise stored or in process within the walls of Covered Locations identified and listed on the Declarations.  It is a condition of this Warehouse and Processing Coverage that the **Assured** arrange for goods and/or merchandise delivered to any Covered Location in transport containers to be unloaded and placed inside said Covered Location within twenty-four (24) hours of the time the receiver of the goods or merchandise becomes aware that the delivery has occurred at said Covered Location, but in no event more than seventy-two (72) hours after the time the delivering conveyance actually arrived (or left a container) at either such destination.

///

DOWNEY BRAND LLP

10.     The Policy Declarations identify GDNC's facility located at 8199 Service Road in Hughson, California (the "Facility") as a "Covered Location," as such term is used in the foregoing insuring provisions of Section II and Section III of the Policy.  Further, Paragraph 13 (entitled "ADDITIONAL DEFINITIONS") of Section III provides the following definition of a "Covered Location":

> The terms shown in bold below shall have the following meanings for the purpose of this Section III Warehouse and Processing Coverage:
>
> (a) '**Covered Location**': means all buildings or structures located at the street address shown in the Declarations unless modified elsewhere by attachments to this **Policy**.

**The Fire**

11.     In 2022, GDNC entered into contracts with a certain customer (the "Contracts") for the sale of fifty (50) containers of walnuts (the "Product"), which were to be delivered from its Facility to Mersin, Turkey, and GNDC thereafter began packing the Product at its Facility to fulfill the orders under the Contracts.

12.     After the Product was packed, it was then stored inside one of the warehouses at the Facility (the "Warehouse") until GDNC was able to make arrangements with a carrier for the acceptance of the Product for shipment (*i.e.* a booking).  As GDNC obtained bookings, the Product was retrieved from the warehouse and temporarily staged in the outside storage zone of the Warehouse to be placed into the shipping containers and prepared for shipment.

13.     On Friday, April 15, 2022, GDNC's shipping team staged loads within the outside storage zone of the Warehouse, with a scheduled shipment date of Monday, April 18, 2022.  Thus, when the subject fire occurred at the Facility on April 16, 2022 (the "Fire"), there were twenty-three (23) loads of Chandler Walnuts that had been staged for pick-up outside of the Warehouse, all of which had been placed within such outside storage zone within the prior twenty-four (24) hours.  GNDC promptly notified CHUBB of the Fire.

14.     Following the Fire, representatives of GNDC were initially uncertain as to whether the Product that sustained damage as a result of the Fire (the "Damaged Product") was

DOWNEY BRAND LLP

1    salvageable.  However, after testing was performed on the Damaged Product by Safe Food

2    Alliance and revealed that the Damaged Product was indeed not salvageable, GNDC was directed

3    by CHUBB to destroy or discard the Damaged Product.  The Damaged Product, valued in excess

4    of $1,000,000.00, subsequently became the primary subject of the claim for losses GNDC

5    submitted to CHUBB under the Policy.

6    **CHUBB's Coverage Position**

7          15.    GNDC retained The Greenspan Company/Adjusters International ("Greenspan") to

8    provide assistance in adjusting and processing the Claim

9          16.    By written correspondence dated January 19, 2023, CHUBB acknowledged

10   "receipt of the above captioned claim notice and request for coverage under the "Warehouse and

11   Processing coverage" in the Policy, and stated in relevant part:

12                    As per the policy terms and conditions, the
                      Warehouse and Processing Coverage applies to
13                    goods and merchandise stored or in process within
                      the walls of Covered Locations. Covered location is
14                    defined in the policy as all buildings or structures
                      located at the street address shown in the
15                    Declarations. In accordance with the terms and
                      conditions as indicated above, because the Chandler
16                    walnuts were not being stored within the walls of a
                      building or structure at the property, no coverage is
17                    afforded for this portion of the claim. … .

18                    Indemnity Insurance Company of North America is
                      committed to the prompt and fair handling of all
19                    claims. If you know of any facts which would bear
                      upon our analysis of this partial denial, we would be
20                    pleased to receive and consider them.

21                    Indemnity Insurance Company of North America
                      reserves its rights under the policy and applicable law
22                    to cite additional applicable policy provisions as may
                      be appropriate. The foregoing reservation is based on
23                    the facts as we know them to date and the terms and
                      conditions of the policy.

24         17.    By written correspondence dated August 23, 2023, CHUBB informed Greenspan
25
     that it was investigating the Claim "under Section I Ocean Cargo coverage" and doing so under a
26
     full reservation of rights.  Through such correspondence, CHUBB requested that GNDC provide
27
     various documentation falling within six (6) categories identified by CHUBB.
28

DOWNEY BRAND LLP

DOWNEY BRAND LLP

18.    Through a 66-page written correspondence dated February 16, 2024, counsel for GNDC provided additional documentation requested by CHUBB, a detailed factual background of the relevant events preceding the Fire (which CHUBB had previously and quite clearly misunderstood), and the applicable law and Policy provisions supporting coverage for the Claim under Section II and Section III of the Policy.

19.    By email correspondence dated March 7, 2024, CHUBB responded to GNDC's counsel, stating:

> We are in receipt of your letter dated February 16, 2024, which responded to Chubb's Reservation of Rights letter dated August 23, 2023. We are still in the process of reviewing the information provided and will provide a more fulsome reply in due course.
>
> In the meantime, should you have further information to provide, please feel free to send it to my attention and Chubb will be glad to consider same.

20.    Through written correspondence dated April 12, 2024, and contrary to the terms of the Policy and applicable law, counsel for CHUBB advised counsel for GNDC that "Chubb respectfully adheres to its declination of coverage for the Chandler walnuts which were being staged outside at the time of the loss."

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Breach of Contract**
**(Against CHUBB and Does 1 - 25)**

21.    Plaintiff re-alleges and incorporates by reference each and every allegation of the above Paragraphs 1 through 20, inclusive, as if fully set forth herein.

22.    Plaintiff is informed and believes that CHUBB and Does 1 – 25 breached their obligations under the Policy by and through various actions including, but not limited to, raising grounds for denying coverage of the Claim that are inapplicable, based upon strained interpretations of the Policy, and/or inconsistent with the evidence and applicable law; and failing to conduct a complete and impartial investigation prior to denying the Claim.

///

1     23.     As a direct and legal result of the breach of contract by CHUBB and Does 1 - 25,

2  Plaintiff has suffered damages that include, but are not limited to, the losses sustained as a result

3  of the Fire, as submitted with the Claim, and totaling in excess of $1,000,000.00, in addition to

4  interest at the legal rate of ten percent (10%) per annum.

5     24.     Plaintiff is informed and believes that the denial of benefits, as alleged herein, was

6  vexatious and without reasonable cause.  Pursuant to Insurance Code section 1619, Plaintiff is

7  entitled to reasonable attorney fees incurred in prosecuting this action in an amount to be proven at

8  the time of trial.

**SECOND CAUSE OF ACTION**

**Breach of Covenant of Good Faith and Fair Dealing**
**(Against CHUBB and Does 1 - 25)**

12     25.     Plaintiff re-alleges and incorporates by reference each and every allegation of the

13  above Paragraphs 1 through 24, inclusive, as if fully set forth herein.

14     26.     Plaintiff is informed and believes that CHUBB and Does 1 – 25 breached their duty

15  of good faith and fair dealing under the Policy by and through various actions including, but not

16  limited to, raising grounds for denying coverage of the Claim that are inapplicable, based upon

17  strained interpretations of the Policy, and/or inconsistent with the evidence and applicable law;

18  and failing to conduct a complete and impartial investigation prior to denying the Claim.

19     27.     As a direct and legal result of the breach of duty of good faith and fair dealing by

20  CHUBB and Does 1 – 25, Plaintiff has suffered damages that include, but are not limited to, the

21  losses sustained as a result of the Fire, as submitted with the Claim, and totaling in excess of

22  $1,000,000.00, in addition to interest at the legal rate of ten percent (10%) per annum.

23     28.     Plaintiff is informed and believes that the denial of benefits, as alleged herein, was

24  vexatious and without reasonable cause.  Pursuant to Insurance Code section 1619, Plaintiff is

25  entitled to reasonable attorney fees incurred in prosecuting this action in an amount to be proven at

26  the time of trial.

27     29.     The refusal of CHUBB and Does 1 – 25 to carry out their obligations under the

28  Policies, including the acts alleged herein, were all done with a conscious disregard of the rights of

DOWNEY BRAND LLP

the Plaintiff to receive the benefits due under the Policy.  These acts were done with the knowledge, approval, and ratification of an officer, director, or managing agent of CHUBB and Does 1 – 25, and these acts continued even after Plaintiff protested and was powerless to obtain compliance by CHUBB and Does 1 – 25 with their obligations.  Plaintiff is therefore entitled to recover punitive damages.

### THIRD CAUSE OF ACTION

**Declaratory Relief**
**(Against CHUBB and Does 1-25)**

30.    Plaintiff re-alleges and incorporates by reference each and every allegation of the above Paragraphs 1 through 29, inclusive, as if fully set forth herein.

31.    A dispute and actual controversy has arisen and now exists between Plaintiff, on the one hand, and CHUBB and Does 1 – 25, on the other, regarding the rights, duties and obligations of the parties under the Policy.

32.    Plaintiffs desires a judicial determination of the respective rights, duties and obligations of the parties with regard to the Policy, and Defendants' actions.  In particular, Plaintiff desires a declaration that:

a.    Plaintiffs have complied with their obligations under the Policy with respect to the Claim;

b.    CHUBB and Does 1 – 25 have not complied with their obligations under the Policy with respect to the Claim, have breached the Policy, and have engaged in conduct that constitutes bad faith and/or a breach of fiduciary duty through their various actions, including, but not limited to, denying the Claim;

33.    Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their rights, duties, and obligations under the Policy.

///

///

///

///

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants CHUBB and Does 1 – 25 as follows:

1.     For compensatory damages against all Defendants in an amount according to proof at trial;

2.     For punitive damages against all Defendants in an amount sufficient to punish and deter Defendants from engaging in the conduct set forth herein in the future;

3.     For reasonable attorneys' fees against all Defendants as allowed by contract or law;

4.     For costs of suit;

5.     For prejudgment interest at the legal rate on all damages and other sums to be due to Plaintiff; and

6.     For such other and further relief as the Court deems just and proper.

DATED:   October 10, 2024              DOWNEY BRAND LLP


By:   _____

ANTHONY L. VIGNOLO
Attorneys for Plaintiff
GROWER DIRECT NUT COMPANY, INC.

4152065.1

9

COMPLAINT

DOWNEY BRAND LLP

# Exhibit A

# *INSURED'S COPY*

GROWER DIRECT NUT COMPANY
2288 GEER ROAD
HUGHSON, CA  95326

**Producer Information:**

UNITED VALLEY INSURANCE SERVICES
3245 W. FIGARDEN DRIVE
FRESNO, CA  937113906

**PRODUCT:** CARGO

**POLICY NO:** 000007910061

**TRANSACTION:** RENEWAL

CHUBB·

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| MC-43581 (07/14) | Schedule Of Forms And Endorsements |
| MC-48933 (10/17) | Marine Open Cargo Declarations |
| MC-49770 (01/21) | Marine Open Cargo Policy |
| MC-48774 (01/17) | War Risk Only Policy |
| MC0155 | AIMU S.R. & C.C. Endorsement (Form No.12) |
| MC-54151 (09/20) | Exclusion of Loss Due to Virus, Bacteria or Micro Organism That Induce Physical Distress, Illness or Disease |
| MC-53500 (05/20) | Proximity Occurrence Limit Of Liability Endorsement |
| MC0080 | Refrigeration Breakdown Clause |
| MS 306076.1 (08/20) | CHANGE IN TEMPERATURE SUB-LIMIT ENDORSEMENT |
| MC-43598 (01/17) | Signature Endorsement |
| MC-0300 | Chubb Producer Compensation Practices & Policies |
| IL P 001 01 04 | U.S. Treasury Departments Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| MA-48310 (10-16) | Claims Directory Property and Marine |

CHUBB®

# MARINE OPEN CARGO DECLARATIONS

| THE INSURANCE COMPANY | Indemnity Insurance Company of North America |
|---|---|
| THE ASSURED | GROWER DIRECT NUT COMPANY<br>2288 GEER ROAD<br>HUGHSON, CA 95326, US |
| GOODS INSURED | Covering legal shipments of goods and/or merchandise consisting principally of walnuts and other similar goods and/or merchandise incidental to the business of the Assured. |
| ATTACHMENT AND TERMINATION | Effective 07/29/2021 and continuous until canceled. |
| POLICY NUMBER | 7910061 |

| Section I Ocean Cargo | | |
|---|---|---|
| LIMIT OF LIABILITY | This Company shall not be liable for more than: | |
| | | **Conveyance Limits:** |
| | $1,250,000 | Vessel or Connecting Conveyance |
| | $1,250,000 | Aircraft |
| | $125,000 | Barge, Any One Tow |
| | | **Other Limits:** |
| | $25,000 | Mail |
| | $25,000 | FedEx, UPS and Other Similar Private Package Delivery Service |
| | $25,000 | Exhibition |
| | $25,000 | Salesperson's Samples |
| | $2,500,000 | Consolidation |
| DEDUCTIBLE | $ 10,000 Per Occurrence | |
| VALUATION | Valued at the **ASSURED's** selling price, if sold prior to shipment, plus any prepaid and/or advanced and/or guaranteed freight if not included in the sales price less all discounts and unincurred expenses as of the date of loss. | |

| Section II Inland Transportation | |
|---|---|
| LIMIT OF LIABILITY | $200,000 In respect of any one Aircraft, Truck or Rail |
| DEDUCTIBLE | $10,000 Per Occurrence |
| VALUATION | Valued at the **ASSURED's** selling price, if sold prior to shipment, plus any prepaid and/or advanced and/or guaranteed freight if not included in the sales price less all discounts and unincurred expenses as of the date of loss. |

| Section III Warehouse and Processing |
|---|

**LIMITS OF LIABILITY & DEDUCTIBLES**

**Schedule of Warehouse Locations**

All Limits of Liability set forth below shall be subject to the Warehouse Limit of Liability Per **Occurrence** shown for each applicable warehouse location.

Maximum Limit of Liability Payable:  Notwithstanding anything contained in the **Policy** or any other endorsement thereto, the most this **Company** will pay with respect to any one **Occurrence** insured under Section III of the **Policy** is the limit of liability shown in the schedule immediately below.

| Location | Address | Warehouse Limit of Liability Per Occurrence | Per Occurrence Deductible |
|---|---|---|---|
| 00001 | 1<br>8199 Service Road<br>Hughson, CA 95326, US | $25,000,000 | $100,000 |
| 00002 | 2<br>2100 & 2288 Geer Road<br>Hughson, CA 95326, US | $25,000,000 | $100,000 |
| 00003 | 3<br>1348 Miekle Road<br>Hickman, CA 95323, US | $6,000,000 | $10,000 |
| 00004 | 4<br>525 S Kilroy Rd<br>Turlock, CA 95380, US | $3,000,000 | $10,000 |
| 00005 | 5<br>107 S. Kilroy Rd<br>Turlock, CA 95380, US | $2,500,000 | $10,000 |

**Catastrophe Occurrence and Annual Aggregate Limits of Liability**

With respect to loss caused by or resulting from the perils of **Earthquake, Wind, Flood** and **Wildfire**, the most this **Company** will pay for direct physical loss in any one **Occurrence** and in the annual aggregate under Section III of the **Policy** is the following, regardless of how many warehouse locations sustain loss in the **Occurrence**:

| | |
|---|---|
| $10,000,000 | per **Occurrence and in the Annual Aggregate** for the peril of **Earthquake** |
| $10,000,000 | per **Occurrence and in the Annual Aggregate** for the peril of **Wind** |
| $10,000,000 | per **Occurrence and in the Annual Aggregate** for the peril of **Flood** |
| N/A | per **Occurrence and in the Annual Aggregate** for the peril of **Wildfire** |

The Catastrophe Annual Aggregate Limits set forth above shall be the most this Company will pay in the policy annual period specific to the applicable catastrophe peril, regardless of how many **Occurrences** arise.

N/A shown for an Occurrence and Annual Aggregate Limit of Liability relative to Earthquake, Wind, Flood or Wildfire shall mean a separate Occurrence and Annual Aggregate Limit  for the applicable peril does not apply, and the Limit of Insurance shown in the Schedule of Warehouse Locations above shall apply.

**Catastrophe Occurrence Deductible**

Coverage under Section III of the **Policy** is subject to the following **Occurrence** Deductibles as shown for the

perils of **Earthquake**, **Wind**, **Flood** and **Wildfire**:

| $100,000 | Per **Occurrence** Deductible for the peril of **Earthquake** |
|---|---|
| $100,000 | Per **Occurrence** Deductible for the peril of **Wind** |
| $100,000 | Per **Occurrence** Deductible for the peril of **Flood** |
| $100,000 | Per **Occurrence** Deductible for the peril of **Wildfire** |

In the event that more than one deductible applies under this **Policy** to loss in any one **Occurrence**, only the largest deductible shall be applied to such **Occurrence**.

### Unscheduled Warehouse Locations

Coverage under Section III of the **Policy** is afforded with respect to locations other than those set forth above in the Schedule of Warehouse Locations, subject to the following limits of insurance and deductible. These limits apply without regard for the number of unscheduled locations.

| Coverage Territory | Limit of Insurance Per Occurrence | Deductible Per Occurrence |
|---|---|---|
| Worldwide | $1,000,000 | $10,000 |

### Catastrophe Annual Aggregate Limits and Deductibles for Unscheduled Locations

| Catastrophe Peril | Catastrophe Annual Aggregate Limit | Catastrophe Deductible Per Occurrence |
|---|---|---|
| Earthquake | $1,000,000 | $100,000 |
| Wind | $1,000,000 | $100,000 |
| Flood | $1,000,000 | $100,000 |
| Wildfire | N/A | $100,000 |

N/A shown for a Catastrophe Annual Aggregate Limit and/or Catastrophe Deductible Per Occurrence relative to Earthquake, Wind, Flood or Wildfire shall mean an aggregate limit and/or deductible for the applicable peril does not apply for Unscheduled Locations, and the Limit of Insurance and/or Deductible Per Occurrence shown for Unscheduled Warehouse Locations shall apply.

The Catastrophe Annual Aggregate Limits for Unscheduled Locations set forth above shall be the most this Company will pay in the annual policy period specific to the applicable catastrophe perils. These limits are not in addition to the Catastrophe Occurrence and Annual Aggregate Limits of Liability specified above.

**VALUATION**   Goods or merchandise covered by Section III Warehouse and Processing Coverage will be valued as follows:

Valued at the **ASSURED's** selling price, if sold prior to shipment, plus any prepaid and/or advanced and/or guaranteed freight if not included in the sales price less all discounts and unincurred expenses as of the date of loss.

## ANNUAL POLICY PREMIUM

| Policy Section | Policy Coverage | Estimated Exposure Values | Exposure Base | Rate | Premium | Premium Type |
|---|---|---|---|---|---|---|
| I - Ocean Cargo & War Policy | Ocean Cargo (Primary) | $103,750,000 | Shipment Values | N/A | $37,577 | Flat |
| | Ocean Cargo (Contingent) | N/A | N/A | N/A | N/A | N/A |
| | War | Included | Included | Included | Included | N/A |
| II - Inland Transportation | Inland Transit (Primary) | $150,000 | Shipment Values | N/A | $0 | Flat |
| | Inland Transit (Contingent) | $156,100,000 | Shipment Values | N/A | $8,621 | Flat |
| III - Warehouse and Processing | Warehouse | As per Limits for Section III above | Values | N/A | $119,894 | Flat |
| Additional Premium Charges | | | | | | Flat |

| Premium Summary | |
|---|---|
| Total Deposit Premium | $0 |
| Total Flat Premium | $166,092 |
| Additional Surcharges and/or Taxes | N/A |
| Non-Transit TRIA Premium | Not Covered |
| Total Premium Excluding Surcharges/Taxes and Non-transit TRIA | $166,092.00 |
| Installment Type | 4 Pay (40 % due month 1, 20% due months 3, 5, 7) |

### Premium Reporting, Calculation and Cancellation / Return Premium:

a) For those coverage premiums identified as "Deposit " in the above "Premium Type" column, on the first anniversary date of the policy and annually thereafter, the Assured shall report the actual exposure values for each coverage listed above in accordance with the above "Exposure Base" for the preceding 12 months. Actual earned premium shall be determined by applying the rates shown herein to the actual exposure values. Such actual earned premiums shall be applied against the deposit premiums. Should the actual earned premium exceed the deposit, such excess shall become immediately due and payable to this Company. Should the deposit premiums exceed the actual earned premium, this Company shall return the unearned premium to the Assured. However, in no event shall the actual earned premium be less than Not Applicable.

b) If the Assured cancels the policy, the Assured shall report actual shipment values or gross revenues (as applicable) from date of cancellation back to the policy anniversary or effective date, and any additional premium or return premium due shall be determined in the manner set forth in (a) above.

c) For those coverage premiums identified as "Flat" in the above "Premium Type" column, the Annual Premium shown above is not subject to retrospective adjustment based on reporting of actual exposure values.

| CHUBB PARTICIPATION | 100% |
|---|---|
| INSURANCE PRODUCER | UNITED VALLEY INSURANCE SERVICES<br>3245 W. FIGARDEN DRIVE<br>FRESNO, CA 93711-0000 |
| UNDERWRITER | JOSHUA FONG |

By _____ 08/09/2021

**Authorized Signature / Date**

# CHUBB®      MARINE OPEN CARGO POLICY

## TABLE OF CONTENTS

**Clause No.**    **SECTION I – OCEAN CARGO**

| | |
|---|---|
| 1. | **DEFINITIONS** |
| 2. | **ASSURED** |
| 3. | **LOSS PAYABLE** |
| 4. | **GOODS INSURED** |
| 5. | **INSURABLE INTEREST** |
| 6. | **VALUATION** |
| 7. | **ATTACHMENT & TERMINATION** |
| 8. | **NON-PAYMENT OF PREMIUM** |
| 9. | **GEOGRAPHICAL LIMITS** |
| 10. | **CONVEYANCES** |
| 11. | **CRAFT CLAUSE** |
| 12. | **LIMIT OF LIABILITY** |
| 13. | **DEDUCTIBLE** |
| 14. | **ACCUMULATION CLAUSE** |
| 15. | **PERILS CLAUSE** |
| 16. | **FREE OF PARTICULAR AVERAGE (F.P.A.)** |
| 17. | **AVERAGE TERMS** |
| 18. | **WAREHOUSE TO WAREHOUSE AND MARINE EXTENSION CLAUSE** |
| 19. | **PARAMOUNT WARRANTIES** |
| 20. | **SUE & LABOR** |
| 21. | **BOTH TO BLAME CLAUSE** |
| 22. | **INCHMAREE CLAUSE** |
| 23. | **EXPLOSION CLAUSE** |
| 24. | **MACHINERY CLAUSE** |
| 25. | **FUMIGATION CLAUSE** |
| 26. | **SHORE CLAUSE** |
| 27. | **WAREHOUSING & FORWARDING, PACKAGES LOST IN LOADING, ETC.** |
| 28. | **DELIBERATE DAMAGE – POLLUTION HAZARD** |
| 29. | **DELIBERATE DAMAGE – CUSTOMS** |
| 30. | **IMPORT DUTY** |
| 31. | **CONTINGENT COVERAGE** |
| 32. | **FOB/FAS** |
| 33. | **DIFFERENCE IN CONDITIONS** |
| 34. | **GLOBAL PROGRAM SOLUTIONS / FOREIGN ENTITY LOSS CLAUSE** |
| 35. | **EXTRA EXPENSES** |
| 36. | **EXHIBITION** |
| 37. | **SALESPERSONS' SAMPLE** |
| 38. | **CONSOLIDATION AND CONTAINERIZATION CLAUSE** |
| 39. | **RETURN SHIPMENTS CLAUSE** |
| 40. | **SIGHT DRAFT SHIPMENTS** |
| 41. | **FRAUDULENT BILL OF LADING CLAUSE** |
| 42. | **CONCEALED DAMAGE CLAUSE** |
| 43. | **DEBRIS REMOVAL CLAUSE** |
| 44. | **SHORTAGE FROM INTERMODAL CONTAINERS CLAUSE** |
| 45. | **INSUFFICIENCY OF PACKING** |
| 46. | **CONTAINER DEMURRAGE CHARGES CLAUSE** |

| 47. | CONTROL OF DAMAGED GOODS CLAUSE |
|---|---|
| 48. | GENERAL AVERAGE |
| 49. | CONTRIBUTORY CLAUSE |
| 50. | BILL OF LADING CLAUSE |
| 51. | PAYMENT OF LOSS |
| 52. | PARTIAL LOSS |
| 53. | CONSTRUCTIVE TOTAL LOSS |
| 54. | LABELS CLAUSE |
| 55. | BRANDS OR TRADEMARKS |
| 56. | PAIR AND SET |
| 57. | OTHER INSURANCE CLAUSE |
| 58. | MISREPRESENTATION AND FRAUD |
| 59. | CARRIER CLAUSE |
| 60. | ASSIGNMENT & IMPAIRMENT OF RECOVERY |
| 61. | MULTIPLE RECOVERY |
| 62. | DECLARATION OF RISK, SPECIAL MARINE POLICIES AND CERTIFICATES OF INSURANCE |
| 63. | INSPECTION OF RECORDS |
| 64. | SUIT AGAINST COMPANY |
| 65. | APPRAISAL |
| 66. | HEADINGS |
| 67. | CHANGES |
| 68. | DUTY OF ASSURED |
| 69. | NOTICE OF CLAIM |
| 70. | SUBROGATION |
| 71. | MARINE CYBER CLAUSE |

| Clause No. | SECTION II – INLAND TRANSPORTATION |
|---|---|
| 1. | ATTACHMENT AND GEOGRAPHICAL LIMITS |
| 2. | VALUATION |
| 3. | LIMIT OF LIABILITY |
| 4. | PERILS INSURED |
| 5. | DEDUCTIBLE |
| 6. | NATURE OF COVERAGE |
| 7. | DURATION OF INSURANCE |

| Clause No. | SECTION III – WAREHOUSE AND PROCESSING COVERAGE |
|---|---|
| 1. | WAREHOUSE AND PROCESSING COVERAGE |
| 2. | LIMITS OF INSURANCE |
| 3. | FULL VALUE REPORTING |
| 4. | GOODS AND MERCHANDISE INSURED |
| 5. | OTHER INSURANCE |
| 6. | RECORDS OF GOODS AND MERCHANDISE |
| 7. | VALUATION |
| 8. | EXCLUSIONS |
| 9. | REPORT OF LOSS OR DAMAGE |
| 10. | NO ABANDONMENT |
| 11. | DEDUCTIBLES |
| 12. | EARTHQUAKE, WIND, FLOOD AND WILDFIRE |
| 13. | ADDITIONAL DEFINITIONS |

## TERMS AND CONDITIONS

### SECTION I
### OCEAN CARGO

**1. DEFINTIONS**

The following terms shall have the meanings set out below wherever they appear in bold in the Policy:

**"Assured"** means the individual, partnership, corporation or other entity identified as the **Assured** on the Declarations and its subsidiary, associated and affiliated companies and includes other entities with whom they have agreed in writing to insure under this **Policy**.

**"Company"** means the insurance company shown on the Declarations.

**"Occurrence"** means an accident giving rise to loss or damage. Accidental loss or damage attributable directly or indirectly to one originating cause, event or incident, or repeated exposure to the same originating cause, event or incident, first occurring in the Policy period will be treated as one occurrence, unless a specific period of time is included in this **Policy**.

**"Policy"** means, collectively, the Policy Declarations (including any Policy Declarations issued in substitution thereof), Marine Open Cargo Insurance Terms and Conditions (all sections), and any Endorsements and Schedules issued by the **Company** and attached hereto.

**2. ASSURED**

The **Company,** in consideration of premiums to be paid at rates hereinafter stated, does insure, lost or not lost, the **Assured**, for account of whom it may concern.

**3. LOSS PAYABLE**

Loss, if any, payable to **Assured** or order.

**4. GOODS INSURED**

This **Policy** shall attach upon all shipments of lawful goods and merchandise consisting principally of such goods and merchandise shown on the Declarations.

**5. INSURABLE INTEREST**

This **Policy** insures all lawful shipments made by or to the **Assured** for their own account as Principals or as Agents for others and in which they have an insurable interest under the terms of sale; or for the account of others from whom written instructions to insure have been received prior to any known or reported loss, damage, or accident, and prior to sailing of vessel.

This **Policy** is extended to cover shipments where the **Assured** has an insurable interest under the terms of sale but may never take title or possession of the goods.

**6. VALUATION**

THIS IS A VALUED POLICY.

Lost or damaged goods and merchandise will be valued as shown on the Declarations.

Foreign currency to be converted into dollars at bankers' sight rate of exchange applicable to each invoice and/or credit and/or draft.

In the event of loss or damage, if the **Assured** is required by the terms of a written contract executed prior to shipment from the point of origin to insure goods for a specific amount, this **Company** will value such goods at that amount.

**7. ATTACHMENT & TERMINATION**

This **Policy** shall attach on each shipment made on and after the **Policy** effective date shown on the Declarations, and to remain in force continuously thereafter until cancelled by either party giving the other sixty (60) days written notice. Such cancellation shall not affect any shipment in transit on the effective date

of cancellation; coverage will continue in full force until conclusion of the applicable voyage but always subject to the Warehouse to Warehouse clause of this Section I and to the Duration of Insurance clause of Section II of this policy. Notwithstanding the above, coverage provided hereunder on any risks insured on a time basis or insured for coverage at any location shall terminate as of the effective date of the cancellation.

## 8. NON-PAYMENT OF PREMIUM

In the event of non-payment of premium when due after policy attachment, this **Policy** may be cancelled by the **Company** upon ten (10) days written notice sent to the **Assured** at his last known address or in care of the broker who negotiated this **Policy**.

## 9. GEOGRAPHICAL LIMITS

Shipments are insured at and from:

Ports and/or Places in the World To Ports and/or Places in the World.

There is no coverage under this Section I Ocean Cargo for shipments by air or surface conveyance originating and terminating:

(a) within the United States of America;

(b) within Canada;

(c) within any other single country; or

(d) between the United States and Canada.

There is no coverage under this Section I Ocean Cargo for shipments between any two or more countries if solely conducted by overland transportation.

## 10. CONVEYANCES

This **Policy** covers shipments made by:

(a) metal self-propelled vessels;

(b) aircraft;

(c) metal barge approved by this **Company**;

(d) rail; or

(e) motor vehicle.

## 11. CRAFT CLAUSE

This **Policy** insures transit by craft and/or lighter to and from the vessel. The **Assured** is not to be prejudiced by any agreement exempting lightermen from liability.

## 12. LIMIT OF LIABILITY

This **Company** shall not be liable for more than the limits shown on the Declarations in respect of goods:

On any one vessel or connecting conveyance, or in any one place at any one time, NOR in the following cases for more than the limits shown on the Declarations in respect of goods:

(a) Shipped by any one aircraft or connecting conveyance;

(b) In any one approved metal barge or by any one tow (other than as a connecting conveyance);

(c) In any one package shipped by U.S. mail or other similar government parcel post service (subject to the applicable conveyance limit); or

(d) In any one package shipped by package delivery services that provide routine transportation of single or individual packages weighing no more than 150 lbs., including the small package delivery divisions of FedEx and UPS, and similar private package delivery services (subject to the applicable conveyance limit).

If the total value at risk exceeds the applicable limit of liability provided by this **Policy**, the **Assured** shall

nevertheless report to this **Company** the full amount at risk and shall pay full premium thereon. The acceptance by this **Company** of such reports and premium shall not alter or increase the limits of this **Company's** liability, but this **Company** shall be liable for the full amount of loss up to but not exceeding the applicable limit of liability.

## 13. DEDUCTIBLE

Each claim for loss or damage occurring hereunder shall be adjusted separately and from the amount of each such adjusted claim the deductible shown on the Declarations shall be deducted per **Occurrence**. The deductible shall not apply to losses recoverable under the Free of Particular Average (F.P.A.) Clauses, the Explosion Clause, and Shore Clause of this **Policy** or to General Average contributions, salvage charges or Sue and Labor Charges.

## 14. ACCUMULATION CLAUSE

Should there be an accumulation of interests beyond the limits expressed in this **Policy** by reason of any interruption of transit and/or **Occurrence** beyond the control of the **Assured**, or by reason of any casualty at a transshipping point and/or on any connecting conveyance, this **Policy** shall attach for the full amount at risk, but in no event for more than twice the **Policy** limit as expressed in the Limit of Liability Clause, provided notice be given this **Company** as soon as practicable upon becoming known to the **Assured**.

## 15. PERILS CLAUSE

Touching the adventures and perils which this **Company** is contented to bear and takes upon itself, they are of the seas, fires, jettisons, assailing thieves, barratry of the masters and mariners, and all other like perils, losses and misfortunes (illicit or contraband trade excepted in all cases), that have or shall come to the hurt, detriment or damage of the said goods and merchandise, or any part thereof, as may be otherwise provided for herein or endorsed hereon.

## 16. FREE OF PARTICULAR AVERAGE (F.P.A.)

Warranted free from Particular Average (F.P.A.) unless the vessel or craft be stranded, sunk, or burnt, but notwithstanding this warranty this **Company** is to pay any loss of damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress. Also to include the risk of jettison and washing overboard irrespective of percentage. The foregoing warranty, however, shall not apply where more limited or broader terms of Average are made applicable by this **Policy**. This Free of Particular Average (F.P.A.) Clause does not apply to total losses.

## 17. AVERAGE TERMS

Subject to the Paramount Warranties of this **Policy** the terms of Average for shipments of Insured goods as shown in the Declarations that are sufficiently packed to withstand the intended voyage are insured against all risks of physical loss or damage from any external cause, except that:

(a) Shipments ON DECK AND SUBJECT TO AN "ON DECK" BILL OF LADING: are warranted Free from Particular Average unless the vessel or craft be stranded, sunk, or burnt, but notwithstanding this warranty this **Company** is to pay any loss or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress. Also to include the risk of jettison and washing overboard irrespective of percentage.

(b) Goods and/or merchandise shipped on board the ocean vessel in containers (intermodal, Over the Road or similar type) or otherwise not subject to an On Deck Bill of Lading are insured against all risks of physical loss or damage provided such goods and/or merchandise are subject to an Under Deck or an optional Under Deck/On Deck Bill of Lading.

(c) Shipments by mail, parcel post or parcel delivery service are insured:

Against all risks of physical loss or damage from any external cause warranted that all packages mailed and insured under this **Policy** will be mailed in conformance with Parcel Post or Foreign Mail regulations existing at the time of shipment in the country of exportation.

Wherever the words "ship" or "vessel" appear in this **Policy**, they are deemed to include any conveyance. Wherever the words "seaworthiness" or "ship or vessel owner" appear in this **Policy**, they are deemed to include also the words "conveyance-worthiness" or "conveyance-owner".

## 18. WAREHOUSE TO WAREHOUSE AND MARINE EXTENSION CLAUSE

This **Policy** is extended to cover all shipments which become at risk hereunder in accordance with the following clauses.

(a) Subject to the terms of sale or terms of purchase or to written instructions the **Assured** agreed to, prior to shipment of goods and merchandise from point of origin, this insurance applies to shipments beginning at the time loading of such goods and merchandise onto conveyance (including stowage within an overseas container) at the place of origin begins. This insurance continues until the first of the following occurs:

(1) The goods and merchandise are unloaded from the delivering conveyance at the intended warehouse or other place of storage at the final insured destination;

(2) The goods and merchandise are unloaded from the delivering conveyance at any other point, whether prior to or at the final insured destination, which the **Assured** or any shipper, assignee or consignee elect to use for storage, distribution, allocation or other lawful activity;

(3) Twenty-Four (24) hours pass from the time the receiver of the goods and merchandise becomes aware that the delivering conveyance has arrived (or left a transit container) at either of the destinations described in (1) or (2) above, but in no event will this insurance continue to apply for more than seventy-two (72) hour after the time the delivering conveyance actually arrived (or left a container) at either such destination.

In the event commencement of transit from the point of origin is delayed for a period in excess of twenty-four (24) hours from the time of loading, this insurance will not apply for any period in excess of such twenty-four (24) hours. This insurance will resume upon commencement of transit and continue as outlined in this provision.

If by the terms of sale or terms of purchase, the **Assured** is responsible for loss or damage to the goods or merchandise at the point of origin prior to the time this insurance would otherwise begin to apply, then this insurance will apply beginning at the time the risk of loss or damage passes to the **Assured**, but in no event will this insurance apply for more than seventy-two (72) hours prior to the time loading of the goods and merchandise was scheduled to begin pursuant to the terms of sale or terms of purchase or the written instructions.

(b) This insurance to cover the goods during:

(1) Deviation, delay, forced discharge, re-shipment and transshipment.

(2) Any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

(c) In the event of exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the originally insured destination, the insurance continues until the goods are sold and delivered at such port or place; or if the goods have not been sold but are forwarded to the originally insured destination or to any other destination this insurance continues until the goods have arrived at final warehouse as provided in clause (a).

(d) If while this insurance is still in force and before the expiry of fifteen (15) days from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge is completed, the goods are resold (not being a sale within the terms of clause c) and are to be forwarded to a destination other than that covered by this insurance, the goods are covered hereunder while deposited at such port of discharge until again in transit or until the expiry of the aforementioned fifteen (15) days, whichever shall occur first. If a sale is effected after the expiry of the aforementioned fifteen (15) days, while this insurance is still in force, the protection afforded hereunder shall cease as from the time of the sale.

(e) Held covered at a premium to be arranged in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage.

(f) This insurance shall in no case be deemed to cover loss, damage or expense proximately caused by delay or inherent vice or nature of the subject matter insured.

(g) It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstance beyond the control of the **Assured**.

Nothing in the foregoing shall be construed as overruling the F.C. & S. Clause or as extending this insurance to cover any risk of war or consequences of hostilities.

It is necessary for the **Assured** to give prompt notice to this **Company** when they become aware of an event for which they are "held covered" under this **Policy** and the right to such coverage is dependent on compliance with the obligation.

## 19. PARAMOUNT WARRANTIES

THE FOLLOWING WARRANTIES SHALL BE PARAMOUNT AND SHALL NOT BE MODIFIED OR SUPERSEDED BY ANY OTHER PROVISION INCLUDED HEREIN OR STAMPED OR ENDORSED HEREON UNLESS SUCH OTHER PROVISION REFERS SPECIFICALLY TO THE RISKS EXCLUDED BY THESE WARRANTIES AND EXPRESSLY ASSUMES THE SAID RISKS:

(a) **F.C. & S.**

NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY THIS INSURANCE IS WARRANTED FREE FROM:

(i) capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

(ii) all loss damage or expense, whether in time of peace or war caused by: (i) any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter or, (ii) any mine or torpedo;

(iii) all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, or with rockets or similar missiles (other than weapons of war) or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power;

(iv) the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom; or from the consequences of the imposition of martial law, military or usurped power; or piracy.

(b) **S.R. & C.C.**

NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY THIS INSURANCE IS WARRANTED FREE FROM LOSS, DAMAGE OR EXPENSE CAUSED BY OR RESULTING FROM:

(i) strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrences or disorders,

(ii) vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

(c) **AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE WITH U.S.A. ENDORSEMENT (March 1, 2003)**

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1. In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to, by, or arising from:

   1.1 ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;

   1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;

   1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter; or

   1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

(d) **RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (U.S.A. ENDORSEMENT)**

This insurance is subject to the Institute Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that:

1. if fire is an insured peril;

2. where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions; and

3. a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Institute Extended Radioactive Contamination Exclusion Clause 1st March, 2003, any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

(e) **DELAY**

Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay whether caused by a peril insured against or otherwise regardless of any other cause or event that contributes concurrently or in any sequence to such loss, damage or expense, even if such other cause or event would otherwise be covered.

(f) **INHERENT VICE**

Warranted free of claim for loss or damage or expense caused by or resulting from inherent vice or nature of the subject matter insured.

(g) **INFIDELITY**

Warranted free of claim for loss or damage or expense caused by or resulting from fraud, misappropriation, secretion, infidelity, theft or any dishonest act done by or at the instigation of the following, including their officers, directors, partners, members, managers, employees and agents:

The **Assured**, the consignee, shipper, supplier or any other party with an interest in the insured transit or in the goods and merchandise assured, other than: (1) carriers for hire and (2) owners and operators of warehouses and storage facilities not owned, leased or controlled by the **Assured**, when this policy insures warehouse and other storage risks.

(h) **AIMU U.S. ECONOMIC AND TRADE SANCTIONS EXCLUSION**

Whenever coverage provided by this policy would be in violation of any US economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the US Treasury Departments Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

(i) **AIMU CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC WEAPONS EXCLUSION (h)**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

## 20. SUE & LABOR

In case of any loss or misfortune, it shall be lawful and necessary for the **Assured**, his or their factors, servants and assignee, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and merchandise, or any part thereof, without prejudice to this insurance; nor shall the acts of the **Assure**d or this **Company**, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of abandonment; to the charges whereof, this **Company** will contribute in proportion to the sum herein insured. This clause is subject to the Limit of Liability set forth in the Declarations.

## 21. BOTH TO BLAME CLAUSE

Where goods are shipped under a Bill of Lading containing the so-called "Both to Blame Collision" Clause, this **Company** agrees as to all losses covered by this insurance to indemnify the **Assured** for this **Policy's** proportion of any amount (not exceeding the amount insured) which the **Assured** may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted, the **Assured** agrees to notify this **Company** who shall have the right at their own cost and expense to defend the **Assured** against such claim, and the **Assured** agrees to provide reasonable assistance in any such defense.

## 22. INCHMAREE CLAUSE

This insurance is also specifically to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the master, mariners, mates, engineers or pilots.

## 23. EXPLOSION CLAUSE

This insurance includes the risk of explosion, howsoever or wheresoever occurring during the currency of this insurance, unless excluded by Paramount Warranties set forth in this **Policy**.

### 24. MACHINERY CLAUSE

When the property insured under this **Policy** includes a machine consisting when complete for sale or use of several parts, then in case of loss or damage covered by this insurance to any part of such machine, this **Company** shall be liable only for the proportion of the insured value of the part lost or damaged, or at the **Assureds** option, for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part; but in no event shall the **Company** be liable for more than the insured value of the complete machine.

### 25. FUMIGATION CLAUSE

In the event of the vessel, wharf or warehouse being fumigated by order of properly constituted authority and direct loss or damage to **Assureds** merchandise results therefrom, this **Company** agrees to indemnify the **Assured** for such loss or damage, and the **Assured** agrees to subrogate to this **Company** any recourse that they may have for recovery of such loss or damage from others, and to reasonably cooperate with this **Company** in respect of such rights.

### 26. SHORE CLAUSE

Where this insurance by its terms provides coverage while on docks, wharves, or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, volcanic action, typhoon, windstorm, landslide, earthquakes, floods (meaning the rising of navigable waters), and/or collapse or subsidence of docks or wharves, bridges culverts and/or other structures even though the insurance be otherwise Free of Particular Average. Nothing in the foregoing shall be construed to include such risks excluded by the FC&S. or S.R.&C.C. warranties.

### 27. WAREHOUSING & FORWARDING, PACKAGES LOST IN LOADING ETC.

Notwithstanding any average warranty contained herein, this **Company** agrees to pay any landing, warehousing, forwarding and special charges for which this **Policy** in the absence of such warranty would be liable. Also to pay the insured value of any package or packages which may be totally lost in loading, transshipment or discharge.

This insurance will also pay reasonable landing, warehousing, forwarding and special charges as a result of the insolvency or financial default of the owners, charterers, managers or operators of the vessel. In no event however, shall this insurance provide coverage for such charges if at the time of loading of the insured subject matter on board the vessel, the **Assured** is aware or in the ordinary course of business should be aware that such insolvency or financial default could prevent the normal continuation of the voyage.

### 28. DELIBERATE DAMAGE – POLLUTION HAZARD

This **Policy** is extended to cover, but only while the insured goods are on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or **Occurrence** creating the situation which required such governmental action would have resulted in a recoverable claim under the **Policy** (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or **Occurrence**.

This clause shall not increase the Limits of Liability otherwise provided for in this **Policy**.

### 29. DELIBERATE DAMAGE – CUSTOMS

This **Policy** is extended to cover, notwithstanding the F.C. & S. warranty specified in this **Policy**, and subject to all other insuring terms, conditions and warranties set forth elsewhere in this **Policy**, physical loss of and damage to the shipment arising out of the performance of inspection duties by customs service agents or other duly constituted governmental agencies.

This clause shall not increase the Limits of Liability otherwise provided for in this **Policy.**

### 30. IMPORT DUTY

This **Policy** is extended to cover, subject to **Policy** terms of average, the risk of partial loss by reason of perils insured against or the duties imposed on goods insured hereunder, it being understood and agreed,

however, that when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, shall attach as an additional insurance upon the goods from the time such duty is paid or becomes due, to the extent of the amounts thereof actually paid or payable.

Any limit of liability expressed in the **Policy** shall be applied separately to such increased value.The **Assured** warrants that on all risks insured hereunder a separate amount shall be reported sufficient to cover the said duty, upon which the rate of premium shall be a named percentage of the merchandise rate.

The **Assured** will, in all cases, use reasonable efforts to obtain abatement or refund of duties paid or reclaimed in respect of goods lost, damaged or destroyed. It is further agreed that the **Assured** shall, when this **Company** so elects, surrender the merchandise to the Customs authorities and recover duties thereon as provided by law, in which event claim under this **Policy** shall be only for a total loss of the merchandise so surrendered and expenses.

This insurance on duty and/or increased value shall terminate at the end of the import movement covered under this **Policy** (including the Warehouse to Warehouse and Marine Extension Clauses if incorporated herein), but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the **Policy** during the storage or transit subsequent thereto.

### 31. CONTINGENT COVERAGE

Contingent Coverages include the following:

#### (a) UNPAID VENDORS

This insurance is extended to cover the interest of the **Assured**, as a vendor in a credit transaction, on all shipments made by the **Assured** on terms under which the **Assured** is not obligated to furnish transit insurance.

The **Company** will guarantee to the **Assured** the prompt collection of losses, damages and expenses otherwise coming within the terms, conditions and warranties of this **Policy** in connection with shipments for which the **Assured** has not been paid. This **Company** will advance to the **Assured** the amount of the loss, damage or expense, without interest. Such advance shall be repayable upon, but subject to and only to the extent of (a) the receipt of the purchase price by the **Assured**, or (b) any recovery received by the **Assured** from insurance effected by the buyer or otherwise.

It is agreed that the coverage provided under the terms of this clause shall be subject to the applicable terms, conditions and warranties set forth elsewhere in this **Policy**.

All goods and/or merchandise and/or property insured under this clause shall be valued as per the Valuation provisions set forth elsewhere in this **Policy**.

The **Assured** agrees to not divulge the existence of the coverage provided by this **Policy** and to use all reasonable means to collect the full amount due from the buyer or others, as the case may be.

#### (b) GUARANTEE OF COLLECTIBILITY

With respect to all goods and/or merchandise and/or property purchased by the **Assured** on C.I.F. or similar terms, where the seller is required to furnish transit insurance, this **Company** guarantees collection of any claim recoverable under this **Policy**, but only to the extent the claim would be recoverable under the terms, conditions and warranties set forth in this **Policy** if the goods and/or merchandise and/or property had been insured hereunder.

In no event shall this insurance inure to the benefit of the seller or his insurer, and the **Assured** agrees to make, and will make, all reasonable efforts to collect the full amount of any loss, damage or expense from the seller and his insurer, but in the event the **Assured** is unsuccessful in making a recovery, this **Company** will advance to the **Assured** the amount of the uncollected loss, damage or expense without interest, subject to repayment by the **Assured** upon recovery from the seller or its insurer.

It is warranted by the **Assured** that the existence of this coverage is to be held confidential as between the **Assured** and this **Company**.

## 32. FOB/FAS

It is hereby understood and agreed that this **Policy** is extended to cover, subject to its terms and conditions, goods and/or merchandise sold on F.O.B., F.A.S., C & F or similar terms whereby the **Assured** is not required to provide transit insurance. This insurance attaches from commencement of transit at the **Assured's** plant or other place of shipment, continues while the goods are in ordinary course of transit and terminates when the **Assured's** interest ceases but not later than the time the goods and/or merchandise are laden on board the overseas vessel, or at time of transfer of title, whichever shall first occur.

This insurance includes any lighterage, and for not exceeding thirty days, while held at terminals, on wharves, piers, docks, quays, storage barges, boats and lighters while awaiting loading on board the overseas vessel or held covered at an additional premium if required, provided prompt notice is given the **Company**.

This insurance, however, is not to attach as respects any goods and/or merchandise if, at the time of loss or damage, there is any other insurance which would attach if the coverage provided under the endorsement had not been effected, except that this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted. Nevertheless, any direct loss sustained by the **Assured** otherwise recoverable hereunder shall be advanced to the **Assured** without interest repayable out of any recovery the **Assured** may receive out of such other insurance.

## 33. DIFFERENCE IN CONDITIONS

(a) With respect to goods and/or merchandise and/or property purchased by the **Assured** on C.I.F. or similar terms, where insurance is arranged by the seller or others, this insurance is extended to cover the difference in the terms, conditions and warranties between the terms, conditions and warranties of such other insurance and the terms, conditions and warranties of this insurance, if the goods and/or merchandise and/or property would otherwise have been insured hereunder.

(b) All goods and/or merchandise and/or property insured under this Difference in Conditions Clause shall be valued as per the Valuation provision set forth elsewhere in this **Policy**.

(c) It is noted and agreed that where the **Assured** is obliged by legislation or otherwise to arrange insurance locally, it shall continue to have the full benefit and protection of this insurance for any difference between this insurance and the terms, conditions and warranties in the insurance arranged elsewhere.

(d) It is agreed that nothing in this Difference in Conditions Clause shall be construed to extend the obligation of this **Company** to pay more than the limit(s) of liability set forth elsewhere in this **Policy**.

## 34. GLOBAL PROGRAM SOLUTIONS / FOREIGN ENTITY LOSS CLAUSE

(a) In the event of a Foreign Loss of a type covered by this **Policy** sustained by a Foreign Entity, the **Company** will indemnify the First Named **Assured** for the Foreign Loss in accordance with this clause, subject to all other terms, conditions, limits, deductibles and exclusions of this **Policy**. This clause provides the only coverage under this **Policy** for a Foreign Loss.

(b) In the event of a Foreign Loss covered under this GPS / Foreign Entity Loss Clause, the **Policy** is amended to provide that the Foreign Entity is not an **Assured** under this **Policy**. The First Named **Assured** is the only **Assured** under this clause.

(c) The following conditions apply under this clause in addition to the conditions and limitations provided elsewhere in this **Policy**:

   (1) Additional Duties of the First Named **Assured**:

      a. With respect to a Foreign Loss which may result in a claim under this clause, the First Named **Assured** assumes the duty to notify this **Company**, and must notify this **Company** in accordance with the standards set forth in the applicable coverage form, coverage part or endorsement. Matters known by the Foreign Entity will be deemed known by the First Named **Assured**.

      b. The First Named **Assured** shall, when directed by this **Company**:

    i.   Retain in its own name, but at this **Company's** expense, a loss surveyor ("loss surveyor") authorized in the jurisdiction or country in which the Foreign Loss occurred and approved by us;

    ii.   Where permitted by applicable law, grant this **Company** the full right to collaborate with such loss surveyor;

    iii.   Grant this **Company** full access to any records produced by such loss surveyor; and

    iv.   Obtain the right to control the investigation, adjustment, defense and settlement of the Foreign Loss using experts approved by this **Company**, including access to books, records, bills, invoices, vouchers and other information.

(2) Payment as Discharge of Liability: With respect to any Foreign Loss, payment to the First Named **Assured** will, to the extent of such payment and in all circumstances, discharge this **Company** from any liability or alleged liability to any other person or entity, whether or not named as an Assured in this **Policy**.

(3) Truthfulness and Accuracy of Information: The First Named **Assured** will make a good faith effort to provide truthful and accurate information to this **Company** with respect to a Foreign Entity, Foreign Loss and matters related thereto. As a condition of coverage, the First Named **Assured** will not, at any time, intentionally conceal or misrepresent facts concerning this **Policy** or any loss or **Occurrence**.

(4) Right to Recovery: The First Named **Assured** will ensure that the Foreign Entity enforces any right to recovery from any third party with respect to the Foreign Loss or assigns to the First Named **Assured** any cause of action that the Foreign Entity may have against any third party arising out of the Foreign Loss. In the event of any recovery by the Foreign Entity for a loss paid by the **Company** to the First Named **Assured**, the recovery shall be applied pursuant to the subrogation clause of this **Policy**.

(d) Additional Definitions: The following definitions apply to this clause in addition to definitions set forth elsewhere in this **Policy**:

(1) "First Named **Assured**" means the first **Assured** shown in the Declarations, and must be a United States-domiciled entity.

(2) "Foreign Entity" means a person, entity or organization whose principal place of business, statutory domicile or residence is located in a country where this **Company** is not licensed, and which would be an **Assured** or insured under this **Policy** but for the location of its principal place of business, statutory domicile or residence. Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

(3) "Foreign Loss" means loss, damage or expense incurred or paid by the Foreign Entity that would be covered under the terms and conditions of this **Policy** if the Foreign Entity was an **Assured** under this **Polic**y, which have not been paid, indemnified or reimbursed under any other insurance.

(4) "License" or "Licensed" means with respect to any country, permitted in accordance with applicable law to conduct the business of insurance in such country.

## 35. EXTRA EXPENSES

### (a) **Expediting Expense**

Where, in the event of loss or damage recoverable hereunder, the **Assured** considers it necessary to forward replacements and/or replacement parts by airfreight or other means, this **Company** will pay reasonable expediting cost in addition to the underlying claim. However the **Company** will not be liable under this clause for more than $250,000 or 25% of the insured value of the goods and merchandise, whichever is less.

### (b) **Additional Freight Expense**

This **Company** will pay costs incurred by the **Assured** to return or forward insured goods and merchandise in transit to the point of origin or a substitute destination because of:

(1) Direct physical loss or damage otherwise insured hereunder;

(2) Frustration of the insured voyage due to the legal acts of any governmental entity;

(3) Inability to complete delivery to the intended consignee due to any legal import restriction or regulations imposed by any government or internationally recognized governmental organization; or

(4) Exercise by a carrier of any of the liberties granted under the Bill of Lading or Contract of Affreightment.

Paragraphs (2) and (3) above apply only if such acts, restrictions or regulations were created subsequent to commencement of overseas transit and this insurance is still in force for the insured voyage. Such paragraphs do not apply to the extent that such acts, restrictions, or regulations are otherwise excluded under this **Policy**.

(c) **Customs Release Expense**

This **Company** will pay costs incurred by the **Assured** to obtain bonds required to release goods and merchandise insured hereunder from legal retention by customs or other government agencies during an insured shipment or voyage.

(d) **Expense to Replace Packages**

This **Company** will pay costs incurred by the **Assured** to replace retail, trademarked or display packaging of goods and merchandise insured hereunder due to direct physical loss or damage from an insured peril during the insured shipment or voyage. This extension of coverage does not apply to labor costs and other expenses to manufacture or produce such replacement packaging, unless otherwise agreed in advance by the **Company**.

(e) **Repacking Expense**

This **Company** will pay costs incurred by the **Assured** to:

(1) Band, cooper, unitize or otherwise repack insured goods and merchandise; and

(2) Forward such goods and merchandise to another destination;

When necessitated by direct physical loss or damage to the packing of such goods and merchandise from an insured peril during the insured shipment or voyage.

(f) **Sorting Expense**

This **Company** will pay costs incurred by the **Assured** to sort, separate or inspect insured goods and merchandise which has suffered direct physical loss or damage caused by or resulting from a covered peril during the insured shipment or voyage. This extension of coverage does not apply to costs to test, calibrate or recalibrate such goods and merchandise, unless otherwise agreed in advance by the **Company**.

## 36. EXHIBITION

(a) This **Policy** is extended to cover the insured property while on display or while being demonstrated at exhibition and in storage for the purposes of being on exhibition, subject to the Exhibition Limit of Liability shown in the Declarations. The Exhibition Limit of Insurance shown in the Declarations is the most the **Company** will pay for loss, damage or expense at any one exhibition (including storage). In the event that the actual value at risk exceeds this amount, the **Assured** will, nevertheless, report the

full amount at risk to this **Company** and pay full premium thereon. Acceptance of such reports shall in no way increase or alter the limit shown herein but this **Company** shall be liable for the full amount of loss up to said limit less any deductible appearing elsewhere herein.

(b) In addition to loss or damage excluded by the Paramount warranties contained elsewhere in this **Policy**, this Exhibition coverage does not insure:

    (1) Loss or damage caused by faulty operation;

    (2) Ordinary wear and tear, mechanical breakdown, latent defect, error, omission or deficiency in design specification or materials and/or gradual deterioration; or

    (3) Loss or damage to electrical appliances or devices of any kind including wiring, arising from electrical injury or disturbances to the said electrical appliances or devices or wiring from artificial causes, unless fire or other accident ensues, and then only for loss or damage from such ensuing fire or other accidents.

(c) Lost or damaged goods and merchandise will be valued as follows:

    (1) If such goods and merchandise are subject to an invoice (including inter-company shipments), at the amount of invoice, plus any prepaid, advanced or guaranteed ocean or air freight not included in the invoice.

    (2) If such goods and merchandise are not subject to an invoice (including inter-company shipments), at the cost to repair or replace such goods and merchandise at final insured destination at the time of loss or damage with material of like kind and quality less allowance for each of the following:

        a. physical depreciation;

        b. obsolescence; and

        c. depletion,

    plus any prepaid, advance or guaranteed ocean or air freight, after deduction of any unincurred expenses or charges.

(d) This Exhibition Coverage applies to merchandise, beginning when it arrives at the exhibition site (or the storage site for the exhibition) and ending at the earlier of:

    (1) 90 days after the date of arrival at the exhibition or storage site;

    (2) 15 days after date of sale at the exhibition site;

    (3) the time of commencement of transit away from the exhibition site; or

    (4) the effective date of cancellation of this policy,

    regardless of the number of **Occurrences**.

## 37. SALESPERSONS' SAMPLES

(a) This **Policy** is extended to cover Salespersons' Samples while in transit between the **Assured's** premises and their salespeople and wherever the property may be while in the custody of the **Assured's** salespeople anywhere in the World, subject to the Salesperson's Sample Limit of Insurance in the Declarations.  In addition, this **Policy** is extended to cover all products of the **Assured** or held by them in trust or on commission or sold but not delivered on the property of the parties for whom they are agents and for whom they are liable.

(b) This **Company** shall not be liable beyond the replacement value of the property insured at the time loss or damage occurs.

(c) In addition to loss or damage excluded by the Paramount warranties contained elsewhere in this **Policy**, the coverage does not insure:

(1) Loss or damage occurring in the business premises of the **Assured** and the permanent offices or salesrooms of the **Assured's** salespeople and agents.

(2) Loss or damage for theft of goods shipped via the **Assured's** own vehicles, unless such theft be occasioned by visible signs of forcible entry, and that any access to the interior of the vehicle will be locked whenever it is unattended.

(3) Loss or damage caused by faulty operation.

(4) Ordinary wear and tear, mechanical breakdown, latent defect, error, omission or deficiency in design specification or materials and/or gradual deterioration.

(5) Loss or damage to electrical appliances or devices of any kind including wiring, arising from electrical injury or disturbances to the said electrical appliances or devices or wiring from artificial causes, unless fire or other accident ensues, and then only for loss or damage from such ensuing fire or other accidents.

(d) It is understood and agreed that the **Assured** will at all times use diligence to protect the property insured hereunder from loss or damage including but not limited to locking any access to the interior of the **Assured's** own vehicle whenever it is unattended.

(e) Salespersons' Samples means lawful goods and merchandise or cases and containers used to hold such goods and merchandise, while such goods and merchandise are being used as a sales sample, displayed for sales purposes  or is in the custody of a salesperson the **Assured** employs anywhere in the world.

## 38. CONSOLIDATION AND CONTAINERIZATION CLAUSE

It is hereby understood and agreed that notwithstanding anything contained elsewhere to the contrary (including, but not limited to, the Warehouse to Warehouse and Marine Extension Clauses), and subject to the Limit of Liability shown on the Declarations, the insurance provided hereunder shall cover property while temporarily detained in the ordinary course of transit on premises of freight forwarders, consolidators, truckers, warehousemen or others (except at any premises owned, leased or operated by the **Assured**) for the purpose of consolidation, deconsolidation, containerization, decontainerization, distribution or redistribution prior to loading or after discharge from the overseas vessel or at any transshipment point for a period not exceeding forty-five (45) days after the arrival at such premises. Held covered in the event of a delay in excess of the above time limit at additional premium. The **Assured** agrees to report all held "covered" exposures and pay premium thereon at this **Company's** rate.

In no event shall this clause be deemed to cover insured goods while at any location solely for the purpose of storage.

## 39. RETURN SHIPMENTS CLAUSE

In the event of refusal or inability of the **Assured** or other consignee to accept delivery of goods or merchandise insured hereunder, this insurance is extended to cover such shipments, subject to the original insured value and insured conditions, during delay and/or return or until otherwise disposed of. The **Assured** agrees to report the facts of such situations as soon as practicable after they have knowledge of them and pay premium, if required at rates to be agreed.

## 40. SIGHT DRAFT SHIPMENTS

Notwithstanding the Warehouse To Warehouse and Marine Extension Clause of this **Policy**, this insurance applies to the **Assured's** interest in shipments of merchandise in transit to which this insurance applies if such merchandise is subject to Sight Draft, Time Draft or Open Account and temporarily delayed in the country of destination pending payment of the purchase price to the **Assured**, until the first of the following occurs:

(a) 60 days pass from the time the delay began;

(b) payment of the purchase price to the **Assured**; or

(c) arrival of the merchandise at the final insured destination.

## 41. FRAUDULENT BILL OF LADING CLAUSE

This **Policy** covers physical loss or damage to merchandise insured under this **Policy** occasioned through the unknowing acceptance by the **Assured** and/or their agents or shippers of fraudulent Bills of Lading and/or shipping receipts and/or messenger receipts.

This **Policy** shall also cover loss or damage caused by the utilization of legitimate bills of lading and/or other shipping documents without the authorization and/or consent of the **Assured** or its agents.

In no event, however, does this **Policy** cover loss or damage arising from the shipper's fraud or misstatement.

## 42. CONCEALED DAMAGE CLAUSE

Should delay occur in the opening of any package after the arrival of goods at the final destination, or should the goods be placed in bond or warehouse or any other place of deposit by the **Assured** or ultimate consignee prior to unpacking; if loss or damage is found when such packages are eventually opened, such loss shall be paid or adjusted by the **Company** in the same manner as though the packages had been opened immediately upon their arrival, provided that:

(a) it is no later than ninety (90) days after arrival at final destination and which can be reasonably shown to have occurred prior to delivery into such places of deposit, and

(b) such loss or damage is recoverable under the terms of the **Policy**.

Notwithstanding the foregoing, packages showing external damage shall be opened immediately upon arrival.

## 43. DEBRIS REMOVAL CLAUSE

This **Policy** covers expenses incurred for the removal of all debris of the property covered hereunder which may be occasioned by loss caused by any of the perils insured except that the **Company** shall not be liable under this clause for more than 10% of the applicable Limit of Liability under this **Policy.** This extension, however, shall not cover any liability or expense for which the **Assured** may be liable under any pollution statute.

## 44. SHORTAGE FROM INTERMODAL CONTAINERS CLAUSE

This **Policy** is also to pay shortage of contents from intermodal containers, meaning the difference between (a) the number of packages as per shipper's and/or supplier's invoice and/or packing list which were loaded and (b) the count of packages removed taken by the **Assured** and/or their agent at time of container emptying, however, wherever, and whenever occurring, provided that: (i) the coverage for the shipment includes loss caused by theft; and (ii) the **Assured** exercises reasonable diligence in its attempt to recover the loss from any party responsible for the shortage through involvement in loading the container. This **Policy** shall exclude liability for any such loss which can be attributed to the forcible entry of the container which occurred following its delivery to store, warehouse or factory of the consignee at the destination to which the insured goods are insured unless covered elsewhere in this **Policy**.

It is understood and agreed that this is a private agreement between this **Company** and the **Assured** which the **Assured** will not reference in certificates of insurance, sales contracts, or otherwise.

## 45. INSUFFICIENCY OF PACKING

In the event of a claim being made for loss or damage which is alleged to be caused by insufficiency or unsuitability of packing, this **Company** will not use such insufficiency or unsuitability as a defense against the claim provided the packing or preparation was carried out by a party other than the **Assured** and the insufficiency or unsuitability arose entirely without the named **Assured's** privity, knowledge or direction. For the purpose of this clause, "packing" shall be deemed to include stowage in a container or liftvan.

## 46. CONTAINER DEMURRAGE CHARGES CLAUSE

This **Policy** shall cover demurrage charges and/or penalties assessed against, and paid by the **Assured** for late return of containers when said containers are retained by the **Assured** at the instruction of the **Company** for inspection by the **Company's** Surveyor in the investigation of loss or damage recoverable under this **Policy.** The time period for which the **Company** shall be liable for said charges and/or penalties shall begin at the time the **Company** instructs the **Assured** to retain the containers for inspection and shall cease at the time the **Company's** Surveyor instructs the **Assured** to return the containers.

It is understood and agreed that this is a private agreement between this **Company** and the **Assured** which the **Assured** will not reference in certificates of insurance, sales contracts, or otherwise.

### 47. CONTROL OF DAMAGED GOODS CLAUSE

It is agreed that in the event of damage to goods insured under this **Policy**, the **Assured** shall retain control of all damaged goods. The **Assured**, however, agrees whenever practicable to recondition and sell such goods after removal of all brands and trademarks, the **Company** being entitled to the proceeds from such sale.

It is further agreed the **Company** will be consulted and allowed to inspect any damaged goods prior to any disposal or sales of such property.

Where it is agreed by both the **Assured** and the **Company** that the disposal or sale of such damaged goods is detrimental to the **Assured's** interest (or which the **Assured** will be unable to sell or dispose of under their agreement with any trade associations) such damage will be treated as a constructive total loss, and the goods shall be destroyed in the presence of a representative of the **Company**.

### 48. GENERAL AVERAGE

General Average and Salvage and Special Charges payable according to United States law and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

This **Company** agrees to pay General Average, Salvage, and Special Charges in full, irrespective of insured and contributory values, but in no event for more than the limits of liability found elsewhere in this **Policy**.

### 49. CONTRIBUTORY CLAUSE

This **Company** shall be liable for only such proportion of General Average and Salvage Charges as the amount declared for insurance purposes (less Particular Average for which this **Company** is liable hereunder, if any) bears to the contributory value of the property hereby insured, but in no event to exceed the applicable Limit of Liability.

### 50. BILL OF LADING CLAUSE

The **Assured** is not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the Bills of Lading and/or Charter Party. The seaworthiness of the vessel as between the **Assured** and this **Company** is hereby admitted and the wrongful act or misconduct of the shipowner or his servants causing a loss is not to defeat the recovery by an innocent **Assured** if the loss in the absence of such wrongful act or misconduct would have been a loss recoverable on the **Policy.** With leave to sail with or without pilots, and to tow and assist vessels or crafts in all situations, and to be towed.

### 51. PAYMENT OF LOSS

In the event of loss which may give rise to a claim under this **Policy**, prompt notice must be given to this **Company**. Coverage hereunder is conditioned upon compliance with this obligation. In case of loss, such loss to be paid in thirty days after satisfactory proof of loss, proof of interest, and adjustment, thereof (the amount of the premium, if unpaid, and all sums due to the **Company** from the **Assured** when such loss becomes due being first deducted, and all sums coming due being first paid or secured to the satisfaction of this **Company**). Proof of loss to be authenticated by the Agent of this **Company,** if there be one where such proofs are taken; otherwise by a Correspondent of the American Institute of Marine Underwriters, if there be one where such proofs are taken, but if neither is represented, then by some other recognized Insurance Authority.

Notwithstanding the foregoing, where such proof of loss has been established and the final amount of a

claim cannot be determined within 30 days, this **Company** shall advance to the **Assured**, an agreed amount not to exceed 50% of the initial claim amount, as estimated by this **Company's** representative. The **Assured** will reimburse this **Company** for any advance in excess of the final claim amount.

## 52. PARTIAL LOSS

In case of partial loss by perils insured against, the proportion of loss shall be determined by a separation of the damaged portion of the insured property from the sound and by an agreed estimate (by survey) of the percentage of damage of such portion; or if such agreement is not practicable, then by public sale of such damaged portion for the account of the owner of the property, and by comparison of the amount so realized with the sound market value, but in no event to exceed the applicable Limit of Liability.

## 53. CONSTRUCTIVE TOTAL LOSS

No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value when the expenditure had been incurred.

## 54. LABELS CLAUSE

In case of damage affecting labels, capsules or wrappers, this **Company**, if liable therefore under the terms of this **Policy**, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules or wrappers, and the cost of reconditioning the goods, but in no event shall this **Company** be liable for more than the insured value of the damaged merchandise.

## 55. BRANDS OR TRADEMARKS

At the option of the **Assured**, in case of damage to property bearing a brand or trademark, the sale of which carries or implies a guarantee of the supplier or the **Assured**, the salvage value of such damaged property shall be determined after the removal in the customary manner of all brands or trademarks. On packages where the brand or trademark cannot be removed, the contents shall be transferred to plain packages. Where removal is impractical, the **Company** and **Assured** shall consult as to how the loss may be minimized. All reasonable expenses incidental thereto shall be part of the claim, but not exceeding, in all, the insured value of the damaged property.

## 56. PAIR AND SET

In the case of loss or damage recoverable hereunder to any one item of a pair or set of items, such loss or damage shall be considered to affect the entire pair or set.

## 57. OTHER INSURANCE CLAUSE

(a) If an interest insured hereunder is covered by other insurance which attached prior to the coverage provided by this **Policy**, then this **Company** shall be liable only for the amount in excess of such prior insurance; the **Assured** to receive return premium charged hereunder equivalent to the cost of such prior insurance at the rate of this **Company**.

(b) If an interest insured hereunder is covered by other insurance which attached subsequent to the coverage provided by this **Policy** then this **Company** shall nevertheless pay to the full extent of liability under this insurance without right to claim contribution from said subsequent insurance.

(c) Other insurance upon the property of same attaching date as the coverage provided by this **Policy** shall be deemed simultaneous and this **Company** shall be liable only for a ratable contribution to the loss or damage as the amount insured hereunder bears to the aggregate of such simultaneous insurance, the **Assured** to receive return premium proportionate to such reduction in liability.

## 58. MISREPRESENTATION AND FRAUD

This **Policy** shall be void if the **Assured** has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the **Assured** touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

## 59. CARRIER CLAUSE

Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.

## 60. ASSIGNMENT & IMPAIRMENT OF RECOVERY

Warranted by the **Assured** that any assignment of this **Policy** or insurable interest therein or subrogation rights thereunder to any party, without consent of this **Company**, shall void the insurance so affected. It is further warranted that when by agreement or act of the **Assured**, prior or subsequent hereto, the right of recovery of the **Assured** for loss of or damage to any property insured hereunder, against any carrier or bailee, is released, impaired or lost, this **Company** shall pay for the loss only to the extent its right of recovery was not released impaired or lost.

Notwithstanding the foregoing and without prejudice to this insurance, the **Assured** may accept from carriers only such bill of lading, receipts or contracts of transportation containing a release or limitation of liability as to the value of the goods as are customarily issued by such carriers.

Further, in the event of loss or damage to property covered hereunder, the **Assured** shall immediately make claim in writing against the carriers, bailees, or others involved.

## 61. MULTIPLE RECOVERY

No loss shall be paid hereunder if the **Assured** has collected the same from others.

## 62. DECLARATION OF RISK, SPECIAL MARINE POLICIES AND CERTIFICATES OF INSURANCE

Authority is hereby given the **Assured** and/or their duly authorized representatives to issue Special Marine Policies and/or Certificates of Insurance thereto on any risks applying hereunder. Such Special Marine Policies and Certificates of Insurance are to be issued in accordance with the terms and conditions of this insurance and are not to be valid unless countersigned by a duly authorized representative of the **Assured**.

When the **Company** supplies copies of Special Marine Policies or Certificates of Insurance of this **Company** to the **Assured**, such action authorizes the **Assured** to utilize such Special Marine Policies or Certificates of Insurance to provide evidence of insurance to third parties, subject to the following restrictions:

(a) Special Marine Policies or Certificates of Insurance may be used only in connection with shipments to which this Open Cargo **Policy** attaches.

(b) Terms, conditions and values entered on the Special Marine Policies or Certificates of Insurance must conform to Open Cargo **Policy** terms applicable to the shipment for which the Special Policies or Certificates of Insurance are used unless the **Company's** written agreement to other terms is obtained.

(c) Copies of all Special Marine Policies or Certificates of Insurance used by the **Assured** must be sent to the **Company** in accordance with the reporting provisions of this **Policy**.

(d) In the event Special Marine Policies or Certificates of Insurance are spoiled, voided, or this **Policy** is cancelled, the original and duplicate certificates are to be returned promptly to the **Company**.

The **Assured** may issue certificates or special marine policies incorporating London Institute Clauses or American Institute Marine Clauses.

By using Special Marine Policies or Certificates of Insurance, the Assured agrees to reimburse the **Company** if, by reason of any incorporation of London Institute Clauses or American Institute Marine Clauses or any omission or other insertions made by the **Assured** upon such Special Marine Policies or Certificates of Insurance, the **Company** is obliged to pay a claim not covered by this Open Cargo Policy or an amount in excess of what this Open Cargo Policy undertakes to pay.

In the event Special Marine Policies are not required, the **Assured** may report such risks by any method mutually acceptable to the **Assured** and this **Company**. The **Assured** agrees to forward copies of all Special Marine Policies, endorsements and declarations to the **Assured's** Broker of Record for transmittal to this **Company**. This insurance shall not be vitiated, however, by an unintentional error, omission or oversight in making reports, provided the same be communicated to this **Company** as soon as known or

discovered by the **Assured** and an additional premium paid, if required, or deficiency of premium made good.

Willful failure to report shipments covered by this **Policy** shall, at the **Company's** option, render the **Policy** null and void with effect from the date of the first shipment subject of such failure to report.

It is agreed that with respect to certificates of insurance issued with no deductible amount, this **Company** to pay the claim in full for loss or damage covered hereunder, and the original **Assured** named herein agrees to reimburse the **Company** for any policy deductible amount so paid.

If such clauses provide insurance which is broader than that provided by this insurance, the **Assured** must obtain the **Company's** written agreement and pay any additional premium, if required, before adding such clauses.

## 63. INSPECTION OF RECORDS

This **Company,** or its representative, shall have the right at any time during business hours to inspect the records of the **Assured** as respects shipments coming within the terms of this **Policy,** both during the term of this **Policy** and for thirty-six (36) months after its termination.

## 64. SUIT AGAINST COMPANY

No suit, action or proceeding against this **Company** for the recovery of any claim shall be sustainable unless commenced:

(a) Within one year from the date of the **Occurrence** out of which the claim arises, provided that if such limitation is invalid under applicable law then such suit, action or proceeding shall be barred unless commenced within the shortest limit of time permitted by such applicable law, and

(b) In a court of competent jurisdiction within the United States of America. Nothing herein constitutes a waiver of **Company's** right to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

This Policy shall be governed by, and construed in accordance with, the general maritime law of the United States of America. To the extent there is not an applicable established rule under such general maritime law, this **Policy** shall be governed by and construed in accordance with applicable state law.

## 65. APPRAISAL

If the **Assured** and the **Company** fail to agree as to the amount of any loss calculated on an actual cash value basis, each, on the written demand of the other, made within sixty (60) days after receipt of proof of loss by the **Company,** shall select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree, then, on the request of the **Assured** or the **Company,** such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The **Assured** and the **Company** shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The **Company** shall not be held to have waived any of its rights by any act relating to appraisal.

## 66. HEADINGS

The headings used in this Policy are for convenience of reference only and do not affect its interpretation.

## 67. CHANGES

This **Policy** may be changed only by written endorsement issued by this **Company** which becomes a part of this **Policy**.

## 68. DUTY OF ASSURED

In the event of actual or imminent loss or damage, it is the **Assured's** duty and the duty of any assignee of the **Assured's** rights hereunder to take all reasonable measures to avert or minimize loss or damage to which this insurance applies and to ensure that all rights against third parties are preserved and exercised.

## 69. NOTICE OF CLAIM

It is a condition of this insurance that the **Assured** or its assignee promptly report any loss or damage which may give rise to a claim under this insurance in accordance with instructions shown on the How to Report a Loss form of this **Policy**.

## 70. SUBROGATION

It is a condition of this insurance that if this **Company** pays for loss, damage or expense, it is subrogated to all of the **Assured's** rights against third parties with respect to such loss, damage or expense, including any rights and remedies against third parties, or their insurers, who should have arranged but failed to arrange for insurance, or were responsible for the loss, damage or expense in accordance with the applicable terms of sale or terms of purchase.

It is a condition of this insurance that the **Assured** assist this **Company** in pursing these rights and remedies.

Net subrogation received from third parties shall be shared between the **Assured** and this **Company** pro rata in proportion to the amount of loss, damage or expense borne by each and the total amount of loss, damage or expense.

## 71. MARINE CYBER CLAUSE

(a) Subject only to paragraph (c) below, in no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus, computer process or any other electronic system.

(b) Subject to the conditions, limitations and exclusions of the policy to which this clause attaches, the indemnity otherwise recoverable hereunder shall not be prejudiced by the use or operation of any computer, computer system, computer software programme, computer process or any other electronic system, if such use or operation is not as a means for inflicting harm.

(c) Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, paragraph (a) shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

# SECTION II
# INLAND TRANSPORTATION

## 1. ATTACHMENT AND GEOGRAPHICAL LIMITS

In consideration of premiums to be paid as provided elsewhere herein and subject to all terms and conditions of Section I Ocean Cargo not in conflict with the following, this **Policy** is extended to cover the goods insured while in due course of transit with respect to shipments beginning and ending within the limits of a single country and shipments between countries if by overland conveyance.

This section specifically excludes waterborne shipments between Alaska and Hawaii, between Alaska or Hawaii and the continental United States or Canada, and United States and/or Canadian coastwise or intercoastal shipments.

## 2. VALUATION

Lost or damaged goods and merchandise will be valued as shown on the Declarations.

Foreign currency to be converted into dollars at bankers' sight rate of exchange applicable to each invoice and/or credit and/or draft.

In the event of loss or damage, if the **Assured** is required by the terms of a written contract executed prior to shipment from the point of origin to insure goods for a specific amount, this **Company** will value such goods at that amount.

## 3. LIMIT OF LIABILITY

This **Company** shall not be liable hereunder for more than the limit of liability shown on the Declarations via any one conveyance or in any one place at any one time. As respects shipments via parcel delivery service or courier service, this **Company** shall not be liable hereunder for more than the limit of liability shown on the Declarations for any one package and via any one conveyance or in any one place at any one time.

## 4. PERILS INSURED

Section II Inland Transportation insures against all risks of physical loss or damage from any external cause, excepting such risks as are excluded by the Paramount Warranties contained in Section I Ocean Cargo, and any superseding conditions contained in an endorsement to this **Policy.**

## 5. DEDUCTIBLE

Each claim for loss or damage occurring hereunder shall be adjusted separately and from the adjustment of each such adjusted claim the deductible shown on the Declarations shall be deducted per **Occurrence**.

## 6. NATURE OF COVERAGE

To attach only while the insured property is in or on motor trucks owned or operated by the **Assured**, or via any common or contract carrier, railroad or regularly scheduled airlines, parcel delivery services, air carriers or couriers, including while on docks, wharves, piers, terminals, bulkheads, in depots, stations and/or on platforms but only while in the custody of such carriers incidental to transportation.

## 7. DURATION OF INSURANCE

Subject to the terms of sale or terms of purchase or to written instructions the **Assured** agreed to, prior to shipment of goods and merchandise from point of origin, this insurance applies to shipments beginning at the time loading of such goods and merchandise onto conveyance at the place of origin begins. This insurance continues until the first of the following occurs:

(a) The goods and merchandise are unloaded from the delivering conveyance at the intended warehouse or other place of storage at the final insured destination;

(b) The goods and merchandise are unloaded from the delivering conveyance at any other point, whether prior to or at the final insured destination, which the **Assured** or any shipper, assignee or consignee elect to use for storage, distribution, allocation or other lawful activity;

(c) Twenty-Four (24) hours pass from the time the receiver of the goods and merchandise becomes aware that the delivering conveyance has arrived (or left a container) at either of the destinations described in (a) or (b) above, but in no event will this insurance continue to apply for more than seventy-two (72) hours after the time the delivering conveyance actually arrived (or left a container) at either such destination.

In the event commencement of transit from the point of origin is delayed for a period in excess of twenty-four (24) hours from the time of loading, this insurance will not apply for any period in excess of such twenty-four (24) hours. This insurance will resume upon commencement of transit and continue as outlined in this provision.

If by the terms of sale or terms of purchase, the **Assured** is responsible for loss or damage to the goods or merchandise at the point of origin prior to the time this insurance would otherwise begin to apply, then this insurance will apply beginning at the time the risk of loss or damage passes to the **Assured**, but in no event will this insurance apply for more than seventy-two (72) hours prior to the time loading of the goods and merchandise was scheduled to begin pursuant to the terms of sale or terms of purchase or the written instructions.

## SECTION III
## WAREHOUSE AND PROCESSING COVERAGE

1. **WAREHOUSE AND PROCESSING COVERAGE**

   In consideration of premiums shown on the Declarations, this **Policy**, subject to all terms and conditions of Section I Ocean Cargo not in conflict with the following, is extended to cover direct physical loss or damage caused by an **Occurrence** to the goods and merchandise of the **Assured** (regardless if said goods or merchandise were originally insured herein for the import/export transit movements) while said goods or merchandise are warehoused or are being processed, manufactured, assembled, modified, tested or otherwise worked upon at Covered Locations set forth on the Declarations attached to this **Policy**. Coverage hereunder shall include loss or damage covered under the S.R. & C.C. Endorsement contained in this **Policy** so long as the **Policy** remains in force.

   This Section III Warehouse and Processing Coverage applies to loss or damage to goods and merchandise insured while such goods and merchandise are being processed, manufactured, assembled, modified, tested or otherwise worked upon, but only if such loss or damage is directly caused by the following perils: fire, explosion, lightning, aircraft, **Flood**, **Wind**, **Earthquake**, or theft unless such perils are otherwise not insured under this Policy.

2. **LIMITS OF INSURANCE**

   The most the **Company** shall pay for loss or damage caused by an **Occurrence** covered by this Section III Warehouse and Processing Coverage is the applicable Limit or Sub-Limits shown on the Declarations applicable to the Covered Location where the loss or damage took place.

3. **FULL VALUE REPORTING**

   If the total value at risk at any location exceeds the applicable limit of liability provided by this Section III Warehouse and Processing Coverage, this **Company** shall in no event be liable for more than the full amount of loss up to but not exceeding the applicable limit of liability. If the premium provision for this Warehouse and Processing Coverage requires the **Assured** to report values at risk, the **Assured** shall nevertheless report to this **Company** the full amount at risk and shall pay full premium thereon.

4. **GOODS AND MERCHANDISE INSURED**

   Coverage under this Section III Warehouse and Processing Coverage of the **Policy** applies to goods and merchandise stored or in process within the walls of Covered Locations identified and listed on the Declarations. It is a condition of this Warehouse and Processing Coverage that the **Assured** arrange for goods and/or merchandise delivered to any Covered Location in transport containers to be unloaded and placed inside said Covered Location within twenty-four (24) hours of the time the receiver of the goods or merchandise becomes aware that the delivery has occurred at said Covered Location, but in no event more than seventy-two (72) hours after the time the delivering conveyance actually arrived (or left a container) at either such destination.

5. **OTHER INSURANCE**

   If any other insurance provides coverage for the **Assured's** goods or merchandise, which are also covered by this Section III Warehouse and Processing Coverage, then any insurance provided by this Warehouse and Processing Coverage shall be considered as excess insurance. However, it is understood and agreed the **Assured** may have excess insurance over the Limits or Sub-Limits set forth on the Declarations without prejudice to any coverage provided by this Warehouse and Processing Coverage and the existence of such excess insurance, if any, shall not reduce any applicable Limit or Sub-Limit shown on the Declarations, provided that the **Assured** has disclosed the total values at risk to the **Company**.

6. **RECORDS OF GOODS AND MERCHANDISE**

   An accurate record shall be kept by the **Assured** and/or the **Assured's** representative of all goods or merchandise covered by this Section III Warehouse and Processing Coverage including but not limited to inventory verification reports, overage, shortage and damage reports, and excess and/or obsolete inventory reports. Such records and or reports shall be made available to this **Company** or its authorized representative as requested or required.

## 7. VALUATION

Goods or merchandise covered by this Section III Warehouse and Processing Coverage shall be valued as shown on the Declarations.

## 8. EXCLUSIONS

There is no coverage under this Section III Warehouse and Processing Coverage for:

(a) Loss or damage caused by or resulting from such risks that are excluded by the Paramount Warranties in Section I of the **Policy**.

(b) Any unexplained loss, mysterious and/or unexplained disappearance or loss or shortage (gradual or otherwise) of property; or loss or shortage of property disclosed on or after taking inventory. This exclusion only applies to locations owned, operated or managed by the **Assured**.

(c) Loss of use.

(d) Indirect or consequential loss or damage of any kind.

(e) Wear, tear, gradual deterioration, vermin, rats, insects of any kind, whether caused by a peril insured against or otherwise. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(f) Loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the **Assured** at the order of any Government Agency, Court or other Authority arising from any cause whatsoever. Such loss, damage, costs, expenses, fines or penalties are excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

## 9. REPORT OF LOSS OR DAMAGE

The **Assured** shall as soon as practicable report to this **Company** or its agents each **Occurrence** of loss or damage that may become a claim under this Section III Warehouse and Processing Coverage and shall also file with the **Company** or its agent within ninety (90) days from the date from the **Occurrence** of loss or damage a detailed sworn proof of loss. Failure by the **Assured** to report the **Occurrence** of said loss or damage and to file such sworn proof of loss as hereinbefore provided shall invalidate any claim under this Warehouse and Processing Coverage for such loss or damage.

## 10. NO ABANDONMENT

There shall be no abandonment to the **Company** of any goods, merchandise or property insured under this **Policy** and/or this Section III Warehouse and Processing Coverage.

## 11. DEDUCTIBLES

It is understood and agreed that each claim for loss or damage covered by this Section III Warehouse and Processing Coverage shall be adjusted separately and the deductible amount shown on the Declarations shall be deducted from the amount of each adjusted claim, except as otherwise stated in Clause 12 of this Warehouse and Processing Coverage. If two or more deductibles under this Warehouse and Processing Coverage apply to a loss, only the highest deductible amount shall apply.

## 12. EARTHQUAKE, WIND, FLOOD AND WILDFIRE

Sub-limits, aggregate limits and deductibles for **Earthquake**, **Wind**, **Flood** and **Wildfire** losses shall be set forth in the Declarations**.**

## 13. ADDITIONAL DEFINITIONS

The terms shown in bold below shall have the following meanings for the purpose of this Section III Warehouse and Processing Coverage:

(a) **"Covered Location"**: means all buildings or structures located at the street address shown in the Declarations unless modified elsewhere by attachments to this **Policy.**

(b) **"Earthquake"**: means all earthquake and earth movement, including landslide, rock fall, tsunami, tectonic or seismic sea waves, volcanic eruption, earth sinking (other than sinkhole collapse), rising, shifting, subsidence or other earth movement, whether observable or not observable, and whether man-made or caused by natural phenomena. With respect to **Earthquake**, one **Occurrence** shall mean all loss arising during a continuous period of ninety-six (96) hours during the term of this **Policy**, but no two such periods shall overlap. Such **Earthquake** shall be deemed to be a single **Occurrence** within the meaning of this **Policy**.

(c) **"Flood"**: means a general and temporary condition during which the surface of normally dry land is partially or completely inundated, which arises from:
    (1) Rain and resultant runoff; or
    (2) The rising, overflow or breach of any boundary of a natural or man-made body of water; or
    (3) Non-tectonic or non-seismic sea waves, tide or tidal waters, storm surge, or spray from any of these, whether driven by wind or not; or
    (4) Unexpected accumulation of water caused by subsurface seepage or subsurface leakage; or
    (5) Mudslide or mud flow caused by accumulation of water on or under the ground regardless of any other cause or event contributing concurrently or in any other sequence of loss.

With respect to **Flood**, one **Occurrence** shall mean all loss arising during a continuous period of seventy-two (72) hours during the term of this **Policy**, but no two such periods shall overlap. Such **Flood** shall be deemed to be a single **Occurrence** within the meaning of this **Policy**.

(d) **"Hail"**: means hail of any size.

(e) **"Limit or Sub-Limit"**: means the Amount of Insurance listed and appearing in the Declarations and applicable to a Covered Location.

(f) **"Straight Line Wind"**: means a fast-moving surface wind of at least 39 mph that lacks a rotational pattern.

(g) **"Thunderstorm"**: means a rainstorm, thunderstorm or squall that produces winds of at least 39 mph and/or hail of any size.

(h) **"Tornado"**: means a rotating column of air touching the ground whether or not attached to the base of a thunderstorm.

(i) **"Unnamed Location Aggregate"**: means the aggregate for all loss or damage, combined, resulting from the perils of Earthquake, Flood and Wind.

(j) **"Wildfire"**: means an uncontrollable fire, forest fire, brush fire, grass fire, firestorm or any other series of fires, regardless of origin, which is predominately fueled by trees, grasslands, timber, scrub, brush or any other naturally occurring, native grown or landscaped vegetation. The term **Wildfire** also includes a fire or fire event declared as a wildfire by a governmental authority.

(k) **"Wind"**: means any wind caused by, resulting from or associated with any atmospheric disturbance declared a hurricane, typhoon, cyclone or tropical storm by the National Weather Service or the National Hurricane Center or other similar governmental agencies. "Wind" also includes **Tornado, Straight Line Wind, Thunderstorm, Hail** and **Wind Driven Rain.** With respect to the peril of **Wind**, one **Occurrence** shall mean all loss arising during a continuous period of seventy-two (72) hours during the term of this **Policy,** but no two periods shall overlap. Such **Wind** shall be deemed to be a single **Occurrence** within the meaning of this **Policy**.

(l) **"Wind Driven Rain"**: means rain driven by wind in conjunction with a hurricane, typhoon, cyclone,

tropical storm, **Tornado**, **Straight Line Wind**, **Thunderstorm** or **Hail** event.

CHUBB°                              **WAR RISK ONLY POLICY**

Company: Indemnity Insurance Company of North
America

**Policy No. WR  7910061**
**(Issued in Conjunction with Marine Open Cargo Policy No. 7910061  )**

### 1.  DEFINITIONS

The following expressions shall have the meanings set out below wherever they appear in bold in this War Risk Only Policy:

**"Assured"** means the individual, partnership, corporation or other entity identified as the Assured on the Declarations of the Marine Open Cargo Policy referenced above.

**"Company"** means the insurance company shown above.

**"Policy"** means this War Risk Only Policy and any Endorsements issued by the Company and attached to this War Risk Only Policy.

### 2.  ASSURED

In consideration of premiums as agreed to be paid, this **Company** does insure, lost or not lost, the **Assured** shown on the Declarations.

For account of whom it may concern, against **WAR RISKS ONLY,** in accordance with the terms and conditions hereinafter set forth.

### 3.  LOSS PAYABLE

Loss, if any, payable to **Assured** or order thirty days after full proofs of loss and proofs of interest have been filed with this **Company.**

### 4.  LIMIT OF LIABILITY*

This **Company** shall not be liable hereunder for more than the limit of liability shown on the Declarations by any one vessel.

In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this **Policy,** the **Assured** agrees, nevertheless, to report to the **Company** full values(s) at risk and to pay premium thereon at the agreed rates. The **Assured** further agrees that acceptance of such reports and premium by the **Company** shall not serve to revoke or to overrule the limit of liability set forth in this **Policy;** however, subject to the limit of liability, this **Company** in accepting these reports does agree to pay partial losses covered by this **Policy** without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

### 5.  ACCUMULATION*

Subject to the provisions of Section 13 of this **Policy,** should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the **Assured** or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port or place by another overseas Vessel, and/or on the on-carrying overseas Vessel, this **Policy** shall attach for the full amount at risk (but in no event for more than twice the **Policy** limit which would be applicable to any one Vessel) provided written notice be given to this **Company** as soon as known to the **Assured.**

**6.    SHIPMENTS COVERED\***

This **Policy** shall cover only those shipments which are insured against marine risks under the Marine Open Cargo Policy of this **Company**, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas Vessel (which shall be construed to include aircraft if included under the Marine Open Cargo Policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under the said **Policy** against marine risks, shall be deemed incorporated herein. Notwithstanding the foregoing, this **Policy** shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

**7.    ATTACHMENT**

Effective as to risks attaching on and after the date shown on the Declarations.

**8.    DECLARATIONS**

Warranted by the **Assured** that all shipments covered by this **Policy** will be reported to the **Company** as soon as practicable and amounts declared as soon as known. Unintentional failure by the **Assured** to report shipments to the **Company** shall not void this **Policy**, and such shipments are held covered subject to **Policy** conditions.

The **Company** is entitled to premiums, at rates of this **Company**, on all shipments covered by this **Policy,** whether reported or not.

Should the **Assured** willfully fail to report shipments covered by this **Policy**, then the **Policy** as to all subsequent shipments shall, at the **Company's** option, become null and void.

**9.    INSPECTION OF RECORDS**

This **Company**, or its agent, shall have the privilege, at any time during business hours and for 12 months after cancellation to inspect the records of the **Assured** as respects shipments coming within the terms of this **Policy**.

**10.\***   (a)   This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured.

(b)   This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this **Policy** (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

**11.\***   Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

**12.\***   This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following, whether due to a peril insured against or otherwise:

(a)    Commandeering, preemption, requisition or nationalization by the government (defacto or otherwise) of the country to or from which the goods are insured.

(b)    Seizure or destruction under quarantine, environmental or customs regulations.

(c)    Delay, deterioration and/or loss of market.

(d)    Nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

**13.\***  Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this **Policy** shall not apply to any loss, damage or expense due to or arising out of, directly or indirectly, nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

**14.\***  (a)    The insurance against the risks enumerated in Clause 10, except the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof

(1)    prior to being on board an overseas Vessel (For the purpose of this Clause 14 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel);

(2)    after being discharged overside from an overseas Vessel at the intended port or place of discharge, or after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port or place of discharge, whichever shall first occur;

(3)    after expiry of 15 days from midnight of the day of arrival of the overseas Vessel at an intermediate port or place to discharge the interest for on-carriage from  that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying overseas Vessel. During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between the overseas Vessels.

(4)    For the purpose of this Clause 14 arrival at the intended port or place of discharge shall be deemed to mean that time when the overseas Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

(b)    The insurance against the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouse at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

(c)    If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 14.

(d)    Shipments by mail, if covered by this **Policy,** are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

(e)    Shipments by air (other than by air mail), if covered by this **Policy** are insured subject to the same terms and conditions as shipments by overseas Vessel.

(f)    It is a condition of this insurance that the **Assured** shall act with reasonable dispatch in all circumstances within their control.

(g)    If anything contained in this **Policy** shall be inconsistent with this Clause 14 it shall to the extent of such inconsistency be null and void.

**15.\***  This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, Vessel or voyage, provided the same be communicated to the **Company** as soon as known to the **Assured** and an additional premium paid if required.

**16.*** And in case of any loss or misfortune, it shall be lawful and necessary to and for the **Assured**, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the **Assured** or this **Company**, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; and to the charges whereof, the said **Company** will contribute according to the rate and quantity of the sum hereby insured.

**17.*** General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

**18.*** It is agreed that the reports of shipments made under the Policy against marine risks mentioned above shall be deemed to be reports under this **Policy** also, and the Assured agrees to pay premiums on all shipments insured under this **Policy** at the war risk rates of the **Company** as fixed from time to time.

**19.*** No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

**20.*** No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

**21.*** It is agreed that this **Policy** is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

**22.*** This insurance may be cancelled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 14 hereof prior to the effective date of such notice. Shipments on which this insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and (in the case of exports) Certificates or Special Policies have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 14, at the rates of the **Company**, provided that, prior to said effective date, such shipments were at the risk of the **Assured** and were covered under the said **Policy** against marine risks.

In the event of loss which may give rise to a claim under this **Policy**, prompt notice shall be given to this **Company**.

* American Institute Clauses (December 2, 1993)

**American Institute of Marine Underwriters**
Endorsement for Open Policies (Cargo)
Strikes, Riots & Civil Commotions (Form 12)
(January 1, 2008)
Endorsement No: 1

To be attached to and form a part of Policy No  7910061

of  Indemnity Insurance Company of North America

Insuring  GROWER DIRECT NUT COMPANY

S.R. & C.C. Endorsement (Form No.12)

THIS INSURANCE ALSO COVERS:

(1)     Physical loss of or damage to property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions;

(2)     Physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts; and,

(3)     Physical loss of or damage to the property insured directly caused by the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this subsection (3) be not excluded by the Free of Capture & Seizure Warranty, Extended Radioactive Contamination Exclusion Clause (Extended RACE Clause) or Chemical, Biological, Bio-Chemical and Electromagnetic Exclusion Clause (CBE Clause) in the Policy to which this endorsement is attached.  Notwithstanding the foregoing, coverage under this subsection (3) is conditional upon the property insured being in the ordinary course of transit and, in any event, **shall terminate:**

(a) As per the Warehouse to Warehouse Clause, Marine Extension Clause, 60 Day South American Clause and any other clauses relating to duration of transit contained in or endorsed onto the Policy; or,

(b) on delivery to the consignee's or other final warehouse or place of storage at the destination named herein; or,

(c) on delivery to any warehouse or place of storage, whether prior to or at the destination named herein, which the Assured elects to use either for storage other than in the ordinary course of transit or for allocation or distribution; or,

(d) in respect of marine transits, on the expiry of 60 days after completion of discharge overside of the property insured from the vessel at the port of discharge; or,

(e) in respect of air transits, on the expiry of 30 days after unloading the property insured from the aircraft at the place of discharge;

**whichever shall first occur.**

While the property insured is at risk under the terms and conditions of this insurance within the United States of America, the Commonwealth of Puerto Rico, the U.S. Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is

acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

    (a) change in temperature or humidity;

    (b) the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;

    (c) loss of market or loss, damage or deterioration arising from delay;

    (d) hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above; or,

    (e) nuclear reaction, radiation or radioactive contamination, as per Extended RACE Clause;

    (f) chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material, as per CBE Clause.

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefore at the rates established by the Assurer from time to time.

This endorsement may be cancelled by either party upon forty-eight hours written, telegraphic, telefaxed, or electronic notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

Effective with respect to shipments made on or after   07/29/2021

Dated   08/09/2021

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

CHUBB

## EXCLUSION OF LOSS DUE TO VIRUS, BACTERIA OR MICROORGANISM THAT INDUCE PHYSICAL DISTRESS, ILLNESS OR DISEASE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| GROWER DIRECT NUT COMPANY | | | 2 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| C | 7910061 | 07/29/2021 to 07/29/2022 | 07/29/2021 |
| Issued By (Name of Insurance Company) | | | |
| Indemnity Insurance Company of North America | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### MARINE OPEN CARGO POLICY

The following exclusion is added to this **Policy**; supersedes any term, provision or endorsement to the contrary in this **Policy**; and applies notwithstanding such term, provision or endorsement:

This **Policy** excludes any and all loss, damage, cost, or expense of any nature whatsoever directly or indirectly caused by or resulting from the following, regardless of any other cause or event, whether or not insured under this **Policy**, contributing concurrently or in any other sequence thereto:

Any virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease, or the fear or threat (whether actual or perceived) of any such virus, bacteria or microorganism, including any and all loss directly or indirectly caused by any action or inaction of the insured or any action or order of a government undertaken in response to, or intended to detect, control, prevent, suppress, mitigate or remediate, the actual, suspected, or anticipated presence of any virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease.

This exclusion does not apply to loss or damage caused by or resulting from moss or fungus (including mold and mildew), or any mycotoxins, spores, scents, or other by-products of fungi, if such loss or damage, including any exclusion thereof, is addressed in a separate provision elsewhere in this **Policy**.

Other **Policy** provisions excluding coverage of loss due to virus, bacteria, or microorganism of a type other than that which induce or are capable of inducing physical distress, illness or disease remain in full force and effect.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative



## PROXIMITY OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| GROWER DIRECT NUT COMPANY | | | 3 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| C | 7910061 | 07/29/2021 to 07/29/2022 | 07/29/2021 |
| Issued By (Name of Insurance Company) | | | |
| Indemnity Insurance Company of North America | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### MARINE OPEN CARGO POLICY

It is hereby agreed that the following shall apply to insurance under SECTION III - WAREHOUSE AND PROCESSING COVERAGE:

If any warehouse location, scheduled or unscheduled, is situated within "close proximity" to one or more other warehouse locations storing insured goods, the most this **Company** will pay for direct physical loss at all such locations in such proximity in any one **Occurrence** is $25,000,000, regardless of how many warehouse locations sustain loss in the **Occurrence.**

For the purpose of this endorsement, locations will be in "close proximity" if they are within **500 feet** of one or more other warehouse locations storing insured goods. Where three or more locations sustain loss in the **Occurrence,** locations may be deemed in "close proximity" even if they are not within 500 feet of all other such warehouse locations.

This Proximity Occurrence Limit of Liability is a part of and not in addition to the Catastrophe Occurrence and Annual Aggregate Limits of Liability on the Declarations or Warehouse Schedule Endorsement.

All Other Terms And Conditions Remain Unchanged.

_____
Authorized Representative

# CHUBB

## REFRIGERATION BREAKDOWN CLAUSE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| GROWER DIRECT NUT COMPANY | | | 4 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| C | 7910061 | 07/29/2021 to 07/29/2022 | 07/29/2021 |
| Issued By (Name of Insurance Company) | | | |
| Indemnity Insurance Company of North America | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

To cover against all risks of physical loss, or damage from any external cause irrespective of percentage, but excluding, nevertheless, the risks of war, strikes, riots, seizure, detention and other risks excluded by the Nuclear Exclusion Clause, F.C. & S. (Free of Capture & Seizure) Warranty and the S.R. & C.C. (Strikes, Riots and Civil Commotions) Warranty in this **Policy**, excepting to the extent that such risks are specifically covered by endorsement; and excluding also any loss or damage due to deterioration of the interest insured unless caused by the vessel being stranded, sunk, burnt, on fire, or in collision.

It is agreed that, while the interest hereby insured is waterborne, under Refrigeration, and/or while being transported via refrigerated conveyance to ultimate destination, this **Company** shall pay for all damages to or deterioration of the interest insured consequent upon the vessel or transporting conveyance being disabled and thereby delayed. Furthermore, this **Company** shall be liable for all damage and/or deterioration to the interest insured caused by breakdown, refrigerating machinery, and/or plant or insulation. Also to cover loss or damage resulting from a General Average Act. But under no circumstances shall claim attach unless breakdown or delay has lasted for at least 24 consecutive hours.

Failure by the carrier to provide adequate power to maintain temperature is a peril covered hereunder.

All other terms, conditions and limitations of this **Policy** shall remain unchanged.

Authorized Representative



## CHANGE IN TEMPERATURE SUB-LIMIT ENDORSEMENT

| Named Insured GROWER DIRECT NUT COMPANY | | | Endorsement Number 5 |
|---|---|---|---|
| Policy Symbol C | Policy Number 7910061 | Policy Period 07/29/2021 to 07/29/2022 | Effective Date of Endorsement 07/29/2021 |
| Issued By (Name of Insurance Company) Indemnity Insurance Company of North America | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

In consideration of the premium charged for this Policy, the most the Company shall pay, under any part, section or endorsement to this Policy, for loss or damage to goods or merchandise caused by or resulting from changes in temperature of any kind to the goods insured, is the sub-limit shown below, regardless of the number of Covered Locations, claimants or claims asserted.

**Ocean Transportation**
Sub-limit: $1,000,000 per occurrence

This sub-limit is subject to a deductible of $15,000.
**Inland Transportation**
Sub-limit: $100,000 per occurrence
This sub-limit is subject to a deductible of $15,000.
**Storage Warehouse**
Sub-limit: $1,000,000 per occurrence
This sub-limit is subject to a deductible of $25,000 Except
$100,000 Temperature Related Loss at: 2100 & 2288 Geer Rd Hughson, CA, 95326,
8199 Service Road Hughson, CA, 95326

All other terms, conditions and limitations of this **Policy** shall remain unchanged.

Authorized Representative

# CHUBB°

## SIGNATURE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| GROWER DIRECT NUT COMPANY | | | 6 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| C | 7910061 | 07/29/2021 to 07/29/2022 | 07/29/2021 |
| Issued By (Name of Insurance Company) | | | |
| Indemnity Insurance Company of North America | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE
COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (a stock company)
**ACE AMERICAN INSURANCE COMPANY** (a stock company)
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

Secretary                                                                                       President

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative



POLICY NUMBER: 7910061

### Chubb Producer Compensation
### Practices & Policies

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

CHUBB®

# Claims Directory
# Property and Marine

POLICY NUMBER: 7910061

**Claims or Loss Notices related to this policy should be reported to the following:**

| Claim Office | Email, Fax and Phone | Location |
|---|---|---|
| Chubb North American Claims | **First Notices Email:**<br><br>CommercialMarineFirstNotice@chubb.com<br><br>**First Notices Fax:**<br><br>(877)-395-0131 (Toll Free)<br>(302)-476-7254 (Local)<br><br>**Phone:**<br><br>(800)-433-0385 - Business Hours<br>(800)-523-9254 – After Hours | P.O. Box 5122<br>Scranton, PA 18505-0554 |